J. F. WILLIAMS, ELVIE LAUNIUS, LUTHER WILLIAMS and GRACIE WILLIAMS CONNER, by her guardian and curator HENRY A. McKAY. v. E. J. WALKER, M. T. WALKER, E. L. WALKER, F. E. RASPBERRY and ETTIE RASPBERRY, Appellants.—62 S. W. (2d) 840.

Division One, August 3, 1933.

*Orville Zimmerman* and *Oscar V. Seed* for appellants.

*McKay & McKay* for respondents.

HYDE, C.—This suit was to determine the title to 108 acres of land in Dunklin County. All parties claim under J. A. Williams, who died seized of said land February 5, 1921. Plaintiffs are his children. His wife did not survive him. This suit is in two counts: Count One alleged that plaintiffs owned the land, but that defendants claim some interest in it, and prayed the court to try, ascertain and determine the title and adjudge plaintiffs to be the owners in fee simple thereof; Count Two was ejectment.

Defendant E. J. Walker filed a separate answer denying plaintiffs' title and claimed the fee to twenty-eight acres of the land, which J. A. Williams had never mortgaged. He alleged that he purchased this twenty-eight acres of land, together with the other eighty acres described in plaintiffs' petition, from the administrator of plaintiffs' father's estate on May 5, 1922. He further alleged that, as a part of the purchase price of the whole 108 acres, he agreed to pay off the two mortgages on the eighty acres made by plaintiffs' father; that he did pay off the second mortgage, paid all interest on the first mortgage until it matured in 1928, and paid the taxes since 1922; but

that he did not pay the principal of the first mortgage, when the same matured, because plaintiffs then claimed title to the land. Defendant then stated that he was entitled to and prayed for an equitable lien upon this eighty acres of the land for the amounts he had advanced to pay the second mortgage, interest and taxes on it and for interest on these advances, against any interest plaintiffs might have in this eighty acres of the land. His answer to the second count was a general denial.

Plaintiffs, in reply to this answer, made general denial of the new matter and further alleged that forty acres of the land, to-wit, the southwest quarter of the southwest quarter, section 18, township 21, range 10, was the homestead of their father; and that the first mortgage on the land "was on the 5th day of May, 1922, fully paid off and discharged and from that time to the present has not been a binding obligation against the land."

Defendants M. F. and E. L. Walker (sons of defendant E. J. Walker) filed a separate answer in which they denied plaintiffs' title to the eighty acres mortgaged by plaintiffs' father as above stated and alleged that they were the owners of this eighty acres by reason of acquiring the title thereto of the purchaser at the foreclosure sale under the first mortgage. Plaintiffs' reply to this answer was a general denial and also a specific denial that the first mortgage was a binding obligation because, as it alleged, this mortgage was fully paid off and discharged on May 5, 1922.

There was not much controversy about the material facts. Plaintiffs' father, J. A. Williams, during his lifetime, on February 23, 1918, executed a first mortgage on eighty acres of the land, including the forty acres which plaintiffs claimed and defendants admitted was his homestead, securing a note to C. A. Kiesler (owned by St. Louis Farm Mortgage Company) of $1650, due February 23, 1928. He also executed a second mortgage on this eighty acres of land to defendant E. J. Walker and his partner securing a note for $1334.35. In 1922, the administrator of the estate of J. A. Williams filed a petition for the sale of all his farm, 108 acres, in the Probate Court of Dunklin County. After proper service and publication, an order of sale was made and thereafter the administrator filed a report of a private sale of the whole 108 acres to E. J. Walker for $6,000. Thereafter, an administrator's deed to the whole 108 acres was delivered to E. J. Walker. This deed recited that E. J. Walker had paid the administrator $6,000, the amount of his bid, and that "the grantor assumes all trust deeds against above described property and agrees to pay off said liens out of the purchase money paid by grantee; to-wit: One deed of trust from J. A. Williams to Missouri Loan and Investment Company in the sum of $1334.35, and one from J. A. Williams to C. A. Kiesler in the sum of $1650." The amount of both of these trust deeds, and accrued interest thereon, was $3740.37.

Apparently, E. J. Walker wrote the administrator a check for $6,000 and the administrator then gave him a check for $3740.37. E. J. Walker, however, thought that he held out that amount and gave the administrator his check for the difference. Perhaps the first mortgage could not be paid off because it had not matured. Nevertheless, the second mortgage, of which E. J. Walker was part owner, was immediately canceled and released and several years' delinquent interest was paid on the first mortgage, but the principal of the first mortgage was not paid. When it came due in February, 1928, E. J. Walker did not pay it, and when the representative of the first mortgage holder, came to collect it he told him to go ahead and sell it. It was foreclosed and the eighty acres conveyed by trustee's deed to defendant E. J. Raspberry, the purchaser at the foreclosure sale. Thereafter, this eighty acres was conveyed by Raspberry to the sons of defendant E. J. Walker. They paid nothing for it, but the amount due on the first mortgage and foreclosure expenses were paid to the St. Louis Farm Mortgage Company by E. J. Walker. (Raspberry answered here by a general denial.) Defendant E. J. Walker went into possession of all of the land in 1922 and ever since that time rented it and received the rents and profits therefrom.

The court heard the case without a jury and entered a judgment which made a finding that the forty acres, claimed as plaintiffs' father's homestead in plaintiffs' reply, was his homestead at the time of his death, occupied by him with his two minor children, and was at the time of the value of $1,500 (all of which had been admitted). The court also found that the two deeds of trust were liens on the homestead forty and the forty adjoining it, placed thereon by plaintiffs' father during his lifetime. The court, however, found that both of these mortgages were fully paid off and discharged by the administrator of plaintiffs' father's estate on May 5, 1922, and were thereafter no longer liens against the land. The court further found that the probate sale was void insofar as it affected the homestead forty and that no title to it passed thereby to E. J. Walker. The court further found that the excess of taxes paid by E. J. Walker, over the amount of rents he received, on this forty was $83. The court adjudged title in fee simple in plaintiffs to the homestead forty, and also possession thereof, subject to a lien of $83 thereon in favor of E. J. Walker, and adjudged that none of defendants had any rights therein. Defendants appealed from this judgment.

While the decree made no finding concerning nor disposition of the claim made in plaintiffs' petition to the rest of the land nor the title of any of the parties thereto, the controversy seems to have been limited to the homestead forty and plaintiffs' claim to the rest of the land abandoned by plaintiffs' reply and by admissions during the trial. Plaintiffs made no claim that the unencumbered twenty-eight acres was part of their father's homestead. Likewise, defendants

seem to have practically conceded at the trial that the administrator's deed conveyed no title to the homestead forty and to have considered E. J. Walker's only right as to it was to have a lien upon it, for the second mortgage and taxes he paid, if the foreclosure title was not good. Those were the issues tried. None of defendants' answers asked for a complete determination of the title to all of the land, as they could have done under Section 1520, Revised Statutes 1929, so they were not entitled to have a judgment determining their title. We will, therefore, consider the case as though, by proper amendment of the pleadings, plaintiffs' title to the homestead forty was the only issue. This seems to be plaintiffs' position. They say in their brief: "There is but one question to be determined by this court and that is whether or not the probate sale of the SW¼ SW¼ 18-21-10, constituting the homestead of J. A. Williams is valid and binding." [On this issue see Libby v. Boward, 288 Mo. 148, 231 S. W. 600; Armor v. Lewis, 252 Mo. 568, 161 S. W. 251; Balance v. Gordon, 247 Mo. 119, 152 S. W. 358; Maupin v. Longacre, 315 Mo. 872, 288 S. W. 54; Johnson v. Adams (Mo.), 7 S. W. (2d) 1010.] Plaintiffs, however, completely ignore the foreclosure sale, considering it had no effect upon the title.

Defendants' brief filed here does not comply with the requirements of Rule 18 of this court which requires an appellant's brief to "distinctly and separately allege the errors committed by the trial court." We would be justified under our rules in dismissing their appeal for this reason. However, since, at the end of the argument in their brief, defendants summarize their contentions so that we can determine the errors of which they complain and the points upon which they rely, and since they are so obviously right about the last point made, we will, without waiving the future application of our rules, consider the merits of this appeal. Defendants say:

"If the administrator's deed is void as claimed by these plaintiffs then there was no moral or legal duty for E. J. Walker to pay off either of the deeds of trust and the sale under the first deed of trust had after this suit was started puts title in fee simple into the purchaser at the foreclosure sale. This particular sale cannot be attacked in this suit and that title should stand undisturbed."

This contention must be sustained. This suit was an action at law by which plaintiffs sought to enforce purely legal rights, namely: Judgment for the legal fee-simple title and possession. [St. Louis Union Trust Co. v. Hill, 283 Mo. 278, 223 S. W. 434; Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217, 19 A. L. R. 107; Sorrell v. Bradshaw (Mo.), 222 S. W. 1024; Stewart v. Stewart (Mo. App.), 262 S. W. 1016.] The nature of an action (whether legal or equitable) is determined from the pleadings. [Ebbs v. Neff, 325 Mo. 1182, 30 S. W. (2d) 616.] Plaintiffs stated no grounds for equitable relief. Defendants' answers made an issue of the legal title. They

made a claim to the legal title to the twenty-eight acres (not claimed to be part of the homestead) under the administrator's deed and to the legal title to the eighty acres under the first mortgage foreclosure. It is true that defendant E. J. Walker asked for equitable relief (a lien to replace the liens he paid) in case plaintiffs were found to be entitled to the legal rights claimed. It is axiomatic that if a party has a full, complete and adequate legal remedy he has no right to equitable relief. For that reason, if defendants can prevail on the issue of legal title, there is no equity issue in this case. For the purpose of this case, we will consider the sons of defendant E. J. Walker in his shoes and entitled to no greater rights than he would be, if he had a deed from them conveying to him the foreclosure title which he paid for and which they hold for him. So considering it, we have the following situation:

E. J. Walker could get no title to the homestead forty by the administrator's deed.

E. J. Walker had agreed as a part of the purchase price for the administrator's deed to the homestead forty (and the other land) to pay off the first mortgage on it.

E. J. Walker was given back $1,650 or held it out (it makes no difference which) to pay off the first mortgage.

The homestead forty (so the court found) was only worth $1,500.

In this situation these questions arise: Must E. J. Walker go ahead and carry out his part of the agreement when he could not get what he bargained for if he did so? Must he pay out, in addition to what he already paid, which seems to have been the full value of the other land, all the homestead forty was worth, when he could not get title to it if he did so? The court in this case not only thought that he must do so but went still further and found that he did do so. Being an action at law we would be bound by the trial court's findings which are supported by substantial evidence. This finding is not only unsupported by substantial evidence, but it is directly contrary to all the evidence. Payment of the amount of the mortgage to E. J. Walker by the administrator was not payment of the mortgage because E. J. Walker never owned it. If the administrator had brought suit against E. J. Walker for breach of his agreement to pay off the mortgage would he not have had as a defense, failure of the consideration for the agreement? When the administrator gave him back an amount equal to the value of the land, he could not legally convey as he had agreed to do, was he not merely returning to E. J. Walker what he was entitled to have returned because he got nothing for it? Anyhow, the fact remains that the mortgage was never paid. Plaintiffs so admit in their brief, saying: ''The proof shows that Walker discharged all of the prior liens except one lien for $1666.50; that prior to discharging this lien he learned that the probate sale insofar as the homestead was concerned was void. He, therefore, failed to

pay off this lien, but admits that he received the money to pay off the same." The first mortgage was, therefore, under the evidence, a valid and subsisting lien and the owner of it had a right to foreclose it.

█ How, then, could plaintiffs be entitled to a judgment, in an action at law, that they were the owners of the legal title in fee simple in the face of the trustees' deed, under a valid foreclosure, conveying the legal title to someone else? Did not the Walkers have a right to buy under the foreclosure? So far as strictly legal rights to the title can be determined in this action at law, they did. If plaintiff had brought a suit to set aside the foreclosure deed on the ground of any fraud or breach of faith on the part of E. J. Walker, we would have a case where such an issue could be determined in the light of all the circumstances. There the maxim "equity regards that as done which ought to be done" if applicable to the facts, could be applied to the transaction between Walker and the administrator. However, in such a case all the equities between the parties would be determined and there the maxim "he who seeks equity must do equity" would also be applied. In such a case, certainly plaintiffs would not be entitled to more than they had in the first place. Before they could recover the land they would have to reinstate the valid liens, and the result might be the same as should be reached in this case. Here plaintiffs do not seek equity; they seek strictly legal rights, by which they would take advantage of E. J. Walker having paid his money and received nothing for it and which would depend upon both the probate sale and the mortgage foreclosure sale being, not merely voidable, but absolutely void and of no force or effect whatever. (As to void and voidable transactions see Branner v. Klaber, 330 Mo. 306, 49 S. W. (2d) 169, l. c. 179.) Their case fails because the foreclosure sale was not absolutely void and stands to vest legal title in the foreclosure purchasers' grantees unless and until it is set aside, upon equitable grounds if any exist, in a proper action for that purpose. We would also have a different case if the unencumbered land had been the homestead, but plaintiffs failed to prove that they owned the legal title to the land conveyed by the foreclosure deed. █ However, since a suit under the statute to determine title may be either legal or equitable according to the pleadings and relief sought, since the facts pleaded and shown in evidence do show that the plaintiffs might be entitled to equitable relief, and since in an equitable action, under the same statute under which their petition is brought, the equities between the parties can be worked out, we think that "this court has discretion in the matter, and may remand the cause to permit the petition to be amended, and a retrial of the cause in accordance with principles enunciated." [Mann v. Bank of Greenfield, 323 Mo. 1000, 20 S. W. (2d) 502.]

The judgment is reversed and the court remanded to the circuit

court, with directions to allow plaintiffs to amend their petition, if they so desire, and to try the cause anew in conformity with the views herein expressed, or, if plaintiffs do not desire to amend their petition, to render judgment for defendants. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.