C. Bewes, Inc., v. Jesse Buster, Empire Garage Company, and Sun Investment Company, Appellants.—108 S. W. (2d) 66.

Division One, July 30, 1937.

580

*Harris & Koontz* for appellants.

*Cyrus Crane, Henry W. Fox, R. Arch Smith* for respondent; *Lathrop, Crane, Reynolds, Sawyer & Mersereau* of counsel.

HYDE, C.—This is an action in equity to set aside fraudulent conveyances, in order to reach assets for the purpose of collecting a debt of $7000 with six per cent interest from January 1, 1933, for which a judgment is prayed. · We have jurisdiction ''because the amount of the debt sued for, principal and interest, computed to. the date of judgment, had (plaintiff) been entitled to judgment, would be, according to the allegations of his petition, in excess of · $7,500.'' [Huttig v. Brennan, 328 Mo. 471, 41 S. W. (2d) 1054, and cases cited.] The trial court found for defendants and entered judgment dismissing plaintiff's bill. Thereafter, at a subsequent term, the court sustained plaintiff's motion for a new trial which had been timely filed. Defendants have appealed from the order granting plaintiff a new trial.

 The court failed to state in its order any ground for its action. However, the grounds stated in the motion for a new trial were not based on any specific erroneous rulings during the trial, but in various ways stated the claim that the court found for the

wrong party. One of these grounds was that "the finding and decree of the court is against the weight of the evidence." In this situation, the order should be affirmed if there was sufficient substantial evidence to sustain a finding in favor of the party to whom the new trial was granted. [Riche v. City of St. Joseph, 326 Mo. 691, 32 S. W. (2d) 578; Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297, and cases cited.] Defendants do not contend otherwise, but say: "It is our position that the court's action at the conclusion of the trial in rendering judgment for the defendants, was the only result warranted by the evidence." Thus the only question is whether there was sufficient substantial evidence to show that plaintiff was entitled to any part of the relief sought.

Plaintiff had a claim against defendant Buster for rent due under two leases and a written modification thereof. In 1924, plaintiff had purchased a 99-year leasehold from the Jewell Realty Company, hereinafter referred to as Jewell, covering property on Oak Street in Kansas City. Jewell entered into a 30-year lease contract with Buster on September 19, 1922, by which it agreed to erect a two-story garage on Oak Street, for which Buster agreed to pay a rental of $13,000 per year for the first seven years, $14,000 per year for the next seven years and $15,000 per year for the remaining sixteen years. Buster deposited $12,000, which was to be held for payment of the last rental installments and upon which he was to be allowed six per cent interest until that rent became due. Thereafter an agreement was made to add a third story to the garage. Negotiations for this were begun with Jewell but the work had apparently not been commenced when plaintiff bought the property from Jewell because, on May 15, 1924, a lease was made between plaintiff and Buster which provided for the third floor to be added. The original Jewell lease had been assigned to plaintiff, and the new third floor lease, which was to terminate at the same time the original Jewell lease was, required Buster to pay an additional rental of $2700 per year for five years and thereafter $3000 per year additional for the remainder of the term. Buster deposited an additional $3000, making his total deposit $15,000, all of which was to be held to be applied on the payment of the last year's rent. Buster also indorsed on the original Jewell lease his agreement to pay to plaintiff the rent therein provided.

In January, 1923, which was before the original building was completed and before plaintiff became the owner of the property, Buster organized the Empire Garage Company, hereinafter referred to as Empire. He became, and still was up to the time of the trial, president and general manager of this company, and as such he received a salary of $500 per month. His ownership in the company varied between twenty-five per cent and thirty-three and one-third

per cent of its stock. On January 9, 1923, he made a lease of the original two-story garage to Empire. This lease was to terminate at the same time as the Jewell lease and provided for payment of rent by Empire to Buster in exactly the same amounts as Buster had agreed in his lease to pay to Jewell. A deposit of $15,000 was made by Empire which it was agreed should be applied to the payment of the last year's rent and Empire was to be allowed six per cent interest on this deposit. On May 22, 1924, after Buster had made the lease with plaintiff, for a third floor to be added to the building, he made a lease of this third floor to Empire for the same term as the other leases but required Empire to pay $2880 per year for the first five years and $3180 per year for the remainder of the term, but required no additional deposit by Empire. After completion, the garage was occupied by Empire, which paid all required rentals in full up to September 1, 1931. The rent was usually paid by an Empire check signed by Buster as president and made out direct to plaintiff as payee.

Prior to September, 1931, plaintiff began a controversy with Buster over an assessment against the property for widening Oak Street. Plaintiff insisted that the leases required that Buster pay half of this assessment and finally brought suit against him for it. Buster, during 1931, began to complain to plaintiff about being broke and about the Empire not making any money at the Oak Street location. It operated two garages on Wyandotte Street and one on McGee, which were apparently doing better. Plaintiff finally accepted a reduced amount for the October, 1931, rent. Thereafter, nothing more was paid until February 9, 1932, at which time plaintiff received an Empire check for $4606.67. It accepted this check in settlement of all rent due up to that time, and also in settlement of the street widening assessment and dismissed its suit against Buster. It also made a new agreement with Buster by which it was provided that the total rentals under both leases from December 1, 1931, to December 1, 1937, should be $1000 per month. This agreement also provided that Buster transfer the $15,000 previously deposited, to plaintiff absolutely and released plaintiff from any liability to account for said sums of money and from its obligation to pay interest thereon. Prior to making this agreement with plaintiff, Buster had canceled his leases to Empire by indorsing on each of them the following: "This lease is canceled by mutual consent this 1st day of October, 1931." Defendants' evidence was that plaintiff was informed of these cancellations before the agreement of February 9, 1932, was made. Plaintiff's evidence was that it was not so informed and did not learn about it until December 1, 1932, when it found out that an instrument, reciting the cancellation of one of these leases, was executed on April 19, 1932, and placed on record April 27, 1932. Defendants'

testimony was that the consideration for these cancellations was forfeiture of the $15,000 which Empire deposited with Buster.

The rental payments made after the settlement of February 9, 1932, were, as follows: For March, on March 15, 1932, $1000; for April, on April 30, 1932, $1000; for May, on June 23, 1932, $500; for May, on July 25, 1932, $500; for June, on August 12, 1932, $500; for June, on September 20, 1932, $500. There is no dispute that these paid the rent due to plaintiff from Buster only to June, 1932. It was admitted by both Buster and his attorney during the trial that at the time suit was commenced in January, 1933, there was due from Buster to plaintiff seven months rent at $1000 per month. No rent was paid by Empire to Buster or by Buster to plaintiff after the payments above stated and Empire vacated the garage in July, 1933. Plaintiff's evidence was that Buster said "he didn't have a thing and the garage couldn't pay if they didn't get it out of the particular property;" that he said "he was very hard pressed, he had speculated in stocks, and he was just about broke;" and that he said "he was unable to pay the rent, that he was broke." Buster admitted that "on February ninth, I told him (plaintiff's president) again, 'I think I can pay that. However, the only way I can pay it is for the place to produce it.'" Buster said that, after his cancellation of his Empire leases, the Empire directors to remain in the garage on a month to month basis and pay "what it would cost me for a reasonable length of time." He further stated that by May, after the settlement and rent reduction agreement, they were not willing to continue on the basis of what he had to pay; and that thereafter the arrangement "was to pay what they could after other bills and expenses were paid." He said (other directors so testified as well) that after they had paid him $1000 per month for March and April, they then decided they were not making it; that thereafter they reduced their payments to $500 per month; and that after four months at that rental, they decided they were not making anything at that location and paid no more rent during the rest of their occupancy. They had about another whole year rent free if their agreement with Buster stands. One of the Empire directors testified: "We said, 'Now, we are willing to stay in here and if we make any money, to pay whatever we made.'" The directors, who testified, were not sure whether or not part of Buster's salary was prorated to the expenses of that location in determining their obligation to pay rent. They left such details of financial management to Buster. It was further shown that Empire had no indebtedness, at the time of the cancellation of the leases, except current bills and real estate mortgages on its Wyandotte street garages which it owned subject to incumbrances. Its McGee Street garage was leased but it was able to pay the required rent out of its operations there.

Defendants contend that plaintiff cannot maintain this suit because plaintiff is not a judgment creditor of Buster. That is the general rule for the reason that a judgment is the best evidence that a claimant has a bona fide claim; because an unpaid judgment tends to show that the remedy at law is inadequate; and for the further reason that an alleged debtor is usually entitled to have a jury trial for the determination of the amount due from him and his defenses thereto. [12 R. C. L. 626, sec. 134; 27 C. J. 727, secs. 579-580; Daggs v. McDermott, 327 Mo. 73, 34 S. W. (2d) 46; Coleman v. Hagey, 252 Mo. 102, 158 S. W. 829; Davidson v. Dockery, 179 Mo. 687, 78 S. W. 624; Crim v. Walker, 79 Mo. 335.] Moreover, it is said that "A debtor's management and control of property should not be interfered with" or "an unscrupulous creditor, having only the faintest shadow of a claim, could work out the debtor's financial destruction." [Wait on Fraudulent Conveyances (3 Ed.), sec. 85.] Nevertheless, this rule is somewhat arbitrary and should not be extended beyond the reasons upon which it is based. Therefore, we find exceptions to it based upon circumstances which make an arbitrary rule inapplicable, and certainly it is inapplicable to an admitted debt. How could failure to have a jury trial prejudice a debtor who has no defense? Neither law nor equity will require a useless act. Why should it be necessary to obtain a judgment to prove the validity of a claim which is admitted? We hold that the usual essential requirement of a showing of validity of a creditor's claim, by reducing it to judgment, may be met by its being admitted. [27 C. J. 732, sec. 587; Nieters v. Brockman, 11 Mo. App. 600; Cortner v. Anderson, Clayton & Co. (Ala.), 144 So. 443 (validity of claim fixed by arbitration); White Co. v. Finance Corp. (C. C. A.), 63 Fed. (2d) 168; 2 Moore on Fraudulent Conveyance, 791, sec. 43.] We further hold that, since the debt involved herein has been specifically admitted, the Buster's right to a jury trial, or to insist on the claim being reduced to a judgment, cannot now be urged as essential to plaintiff's right to proceed in equity.

The basis of a suit in equity to set aside a fraudulent conveyance is the same as a suit in equity for any other purpose; namely: Inadequacy of legal remedy. Inadequacy of the legal remedy can be shown by other evidence than an uncollected judgment. [12 R. C. L. 630, sec. 137; 27 C. J. 729, secs. 581-587; Farmers & Traders Bank v. Kendrick, 341 Mo. 571, 108 S. W. (2d) 62; Lomax & Stanley Bank v. Peacher (Mo.), 30 S. W. (2d) 44; Cape County Savings Bank v. Wilson, 225 Mo. App. 14, 34 S. W. (2d) 981 (where claim was allowed in probate court against estate of one partner and liability was admitted by the other); Hume v. Wright (Mo.), 274 S. W. 741; Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004; Wait on Fraudulent Conveyances (3 Ed.), secs. 83 and 85.] Plain-

tiff, because the validity of its claim was conceded, was entitled to maintain this action without first obtaining a judgment in an action at law, if its evidence was otherwise sufficient to show inadequacy of its legal remedy. Defendants' contention is that the evidence showed that Buster was receiving a salary of $500 per month and that this made it apparent that plaintiff could collect something from him if it obtained a judgment against him. However, it is not the rule that equitable relief will be denied unless all possible action at law would be entirely useless. It is sufficient ground for relief in equity that the legal remedy is not full, complete, and adequate. [Williams v. Walker, 333 Mo. 322, 62 S. W. (2d) 840; Jones v. Jones, 333 Mo. 478, 63 S. W. (2d) 146; Priest v. Oehler, 328 Mo. 590, 41 S. W. (2d) 783.] If $7000 and accrued interest was the only debt between the parties the situation would be different. Here, disregarding any question of exemptions (see Sec. 1163, R. S. 1929), Buster had only a $500 monthly salary to meet a debt increasing by $1000 every month. Moreover, after 1937 it was a certainty that the amount of his monthly debt would increase 50 per cent. It was not equally certain that his salary would continue at even the same amount. Plaintiff's evidence showed that Buster claimed he was broke, had nothing, was hard pressed, and could pay nothing except what he could get from Empire. From his statement that he was hard pressed, it is a reasonable inference that he had other debts. Defendants offered no proof that he was solvent, and when plaintiff's counsel asked Buster the amount of his assets and liabilities, he was prevented from forcing such disclosure by objections on behalf of defendants. We, therefore, hold that the evidence as to Buster's insolvency showing the impossibility of paying his indebtedness out of his probable income sufficiently proved the inadequacy of plaintiff's remedy for collecting the debt (matured and maturing) due to it from Buster.

A further question is, was there substantial evidence to show that the cancellation of these leases by Buster was a fraudulent conveyance. It is well settled that forgiving a debt may be a fraudulent conveyance. [27 C. J. 421, sec. 26; 27 C. J. 462, sec. 97; 12 R. C. L. 508, sec. 36; L. R. A. 1918A, 400 note.] Defendants argue the rights of an assignee of a lease to relieve himself from performance of its covenants by reassignment. This rule of the law of landlord and tenant, whatever it may be, has nothing to do with this case. Empire was not an assignee of Buster's lease. It was obligated directly to him on separate leases containing different provisions. These leases were valuable assets owned by Buster. The question here is: Did Buster have the right, as against existing creditors, to give away (or transfer without adequate consideration) valuable assets? Clearly, the evidence of his financial condition (considering

reasonable inferences that might be drawn therefrom) was sufficient to warrant a finding that he did not have such right. Although we hold that the court would have been justified in finding inadequate consideration for the releases, we do not agree with plaintiff's contention that there was no consideration therefor. If the $15,000 was forfeited absolutely so that Empire had no further rights in it for credit on future rentals or to receive interest on it, then it would be valuable consideration. Whether or not it was adequate or grossly inadequate consideration must be determined by the court in light of all the circumstances and in view of the amounts involved. Plaintiff evidently considered that a like forfeiture by Buster was a sufficient consideration for a substantial reduction of the rent over a six-year period. ▪ What we hold is that there were enough badges of fraud on this transaction (insolvency of holder of debts canceled, inadequacy of consideration, cancellation just prior to maturity of large indebtedness which was not paid, close and confidential relationship of the parties, withholding from the record or otherwise concealing the facts, and transactions different from the usual method of doing business) to justify inferences of a fraudulent intent to hinder and delay plaintiff in the collection of Buster's obligations to it. [Hendrix v. Goldman (Mo.), 92 S. W. (2d) 733; Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297.] We, therefore, hold that plaintiff's evidence was sufficient, if fully accepted by the court as true, to show that plaintiff was entitled to equitable relief against defendants Buster and Empire; and must affirm the order granting a new trial against these two defendants.

▪ However, plaintiff showed no ground for relief against defendant Sun Investment Company. Sun was organized in the fall of 1932 to take over the real estate owned by Empire and to enable the incorporators, who were the stockholders of Empire, to conduct business operations not authorized under Empire's charter. The transfer of the real estate was accomplished by the stockholders of Empire taking the real estate in exchange for $65,000 of their stock, and then taking stock in Sun for the real estate. The evidence was that "the value of the buildings was distributed to the stockholders and the stockholders in turn turned that in for a like interest in the new company. . . . The new company then . . . leased those two buildings back to the Empire Garage Company to be operated as garages." The capital of Empire was reduced to $20,000.

This evidence is not sufficient to show any right of plaintiff to object to the transfer of real estate from Empire to Sun for two reasons.

First: Plaintiff had neither established any indebtedness against Empire, nor shown an admission of any indebtedness of Empire to either plaintiff or to Buster. Although Buster owes plaintiff, in

order to establish an indebtedness from Empire to Buster, plaintiff will have to win its suit against Buster and Empire, by proving Buster's cancellations to be invalid. We hold herein that plaintiff produced substantial evidence tending to sustain its right to win that suit, and, for that reason, held that the court could grant it a new trial. We cannot know that it will win on the evidence produced at a new trial or even on the same evidence, because it is for the trial chancellor to decide the credibility of conflicting oral testimony and to draw therefrom such inferences as appear to be reasonable. Moreover, Empire may have other defenses or counter claims against Buster if these releases should be set aside. Thus as to Sun, plaintiff is not in the position of a valid creditor of its transferor, and has not definitely established a valid indebtedness from such transferor to anyone.

Second: There was no showing that the transfer left Empire insolvent, or unable to meet any obligations under the leases from Buster, which might be established against it if the releases from Buster were set aside. On the contrary, the evidence all tended to show that Empire was operating garages at a profit at its other three locations; and that its assets were $26,000 over all liabilities after the transfer. No attempt was made to show the amount of its income. Moreover, its financial condition may have been actually improved by the refinancing, because it was to some extent relieved from its obligations on real estate mortgages by having another corporation assume them. Thus plaintiff failed to show that this transfer could in any event adversely affect its rights or interests.

At one time, it was held that this court could not affirm an order granting a new trial conditionally but was limited to affirming it as made or reversing it completely. [Gaty v. United Rys. Co. of St. Louis, 286 Mo. 503, 227 S. W. 1041.] The Gaty case was overruled in Cole v. St. Louis-San Francisco Railroad Co., 332 Mo. 999, 61 S. W. (2d) 344, in which this court en banc held that ''the only difference in an appeal from an order granting a motion for new trial, and one from a final judgment, is that the errors charged in the motion for new trial (are) to be heard here before final judgment rather than afterward;'' that ''no other change in procedure is expressed or contemplated by those acts (Sec. 1018, R. S. 1929, Mo. Stat. Ann., sec. 1018), authorizing an appeal from an order granting a new trial,'' and that ''we are directed by statute to 'give such judgment as such court (trial court) ought to have given.' '' The trial court could have granted a new trial as to part of the parties or as to part of the issues. [Busse v. White (Mo.), 287 S. W. 600; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559; Denny v. Guyton, 327 Mo. 1030, 40 S. W. (2d) 562.] Since plaintiff failed to show any grounds for relief against defendant Sun, a new trial should not have been granted against it.

The order sustaining the motion for a new trial is affirmed and the cause remanded with directions to dismiss as to defendant Sun Investment Company and to proceed to trial against the other two defendants. *Ferguson* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.