255 S.W.2d 138 (1952)
O'NEAL
v.
MAVRAKOS CANDY CO.
No. 21738.
Kansas City Court of Appeals. Missouri.
December 8, 1952.
*139 Ira H. Lohman and Charles H. Howard, Jefferson City, for respondent.
Arthur G. Heyne, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for appellant.
DEW, Judge.
This is an action to recover a commission alleged to be due the plaintiff for services in obtaining a store lease for the defendant (lessee). A jury was waived and on trial of the issues a judgment was rendered by the court in plaintiff's favor in the sum of $2,340, with interest from March 10, 1950. Defendant has appealed.
According to the plaintiff's evidence he was orally employed by defendant's president to obtain for the defendant a lease on a certain business property in Jefferson City, Missouri, for a candy shop to handle defendant's products. The premises were then already occupied by other tenants. Defendant was told by the plaintiff that the owners (lessors) would be unwilling to pay the plaintiff any commission in case a new lease were made, and that defendant would have to pay the commission; that Mavrakos said: "Don't let that building get away from you"; that defendant proceeded to negotiate with the owners to terminate their present lease and entertain the defendant's proposition, which involved increase rental and substantial improvements to the property. The plaintiff had many conversations with the owners and with defendant's agents, and kept the defendant advised of his progress through its local agent in Jefferson City, according to defendant's instructions. Thereafter, without plaintiff's knowledge, a lease was entered into in St. Louis between the owners and the defendant by which the defendant agreed to pay $350 a month for four years on the premises in question, with four additional four-year extension options, plus six percent on all gross retail sales per annum in excess of $70,000, and defendant also agreed to expend over $30,000 in improvements of the premises, to be repaid to defendant out of the six percent of the retail sales, which arrangement, with subrentals, now had reduced the defendant's net rent on the candy shop to $25 a month.
Defendant's evidence contradicted practically all of the evidence of the plaintiff on the main issues, its witnesses testifying that no agreement was ever made to employ the plaintiff for any purpose, nor to pay him any commission whatever, and that the conversations with him had to do only with a possible purchase of the property, which plaintiff admitted he would be unable to procure. No requests were made of the court for any findings of fact or declarations of law, and the court made none.
At the outset the defendant contends that the action was brought on the theory of an express contract; that it was tried on that theory, and that proof of such contract wholly failed. Plaintiff maintains that the petition did not declare upon any express contract but upon an implied contract, and seeks to recover on quantum meruit; that it was tried on such theory and that each element thereof was fully established by the evidence.
The material allegations of the petition are that on May 31, 1949, the defendant, through its officers and agents, at Jefferson City, contacted the plaintiff in regard to leasing or buying a two-story building in Jefferson City for the purpose of a storeroom for the sale of its products and that on said day, through its officers, agents and servants, employed plaintiff to obtain a lease upon that property and "defendant agreed to pay the plaintiff the usual and ordinary commission for his services in procuring said lease"; that in accordance with such request plaintiff did contact the various parties owning an interest in the property, discussed with them the desire and requirements of the defendant in a possible lease on the premises, and made a *140 trip to St. Louis to contact some of the owners with a view of inducing them to lease the property to defendant.
The petition further alleges that after several conferences between the parties, the owners and defendants were brought together and agreed upon the terms of a lease, which was procured through the efforts of the plaintiff; that thereafter and on or about November 1, 1949, the defendant did enter into a written lease with the owners of the property for a term of four years, beginning January 1, 1950, at an annual rental of $4,200 payable in monthly installments of $350 each in advance, with an option to the defendant to renew said lease for four additional four-year periods on substantially the same terms, the defendant agreeing further to expend $30,000 as additional rent in the way of improvements to the property during the first four years, and that in accordance with the terms of the lease the defendant took possession of the property and is now engaged in remodeling and improving the same as a location for a candy store and as an outlet for the defendant's merchandise. The petition alleges that the total rental fixed for the first four years of the lease was $16,800, and the $30,000 to be expended upon improvements by the defendant is additional rental accruing to the owners, making the total rental, if options for extensions are exercised, of $114,000. It is further alleged that the usual and ordinary commission for securing such leases in Jefferson City is five percent of the total gross rental of said property. It is averred that by reason thereof the defendant is indebted to the plaintiff for five percent of the total rental of $5,700, of which there is now due such percentage on the first four years of the rent ($16,800) and five percent on the $30,000 rental by virtue of improvements, making the total sum now due the plaintiff of $2,340, for which demand has been made and refused.
If the foregoing petition declares upon an express contract, no recovery thereon can be had on the theory of an implied contract, or on the theory of quantum meruit, or on mere proof of reasonable value of the services. "It is no doubt true that one cannot declare upon an explicit contract and then recover as upon a quantum meruit." Stanley v. Whitlow, 181 Mo. App. 461, 464, 168 S.W. 840, 841. See Mills v. Metropolitan Street Railway Co., 282 Mo. 118, 221 S.W. 1. "For the trial court to give these instructions was error as the law has been definitely established in this State that in an action on an express contract a recovery cannot be had as on a quantum meruit." Boyer v. Eberts, Mo. App., 241 S.W.2d 44, 46. See, also, Littlefield v. Littlefield, Mo.App., 168 S.W. 841; Usona Mfg. Co. v. Shubert-Christy Corp., Mo.App., 132 S.W.2d 1101, 1103.
The three main elements of plaintiff's cause of action, as alleged, are that he was orally employed by the defendant to procure a lease on the particular property; that defendant agreed to pay plaintiff the usual and ordinary commission to obtain such a lease, which commission would be 5 percent on the gross rental, and that plaintiff rendered the services agreed upon. If this be a declaration on an express contract the amount of recovery is limited to the amount expressed and conditioned upon proof thereof, to wit, five percent of the gross rental. If it be a declaration on an implied contract, recovery may be had on quantum meruit for the reasonable value of the services rendered at the defendant's instance and request. Having pleaded an employment and the rendition of the services in the petition before us, the plaintiff then charges the defendant with having also agreed to an exact method of calculation by which the exact amount of the compensation was to be computed. This, in our opinion, constitutes a declaration on an express contract in which the valuation of and compensation for the services were expressly and explicitly agreed upon. It follows that to recover on the petition, as drawn, plaintiff must prove, among other elements of his cause of action, that defendant agreed to pay plaintiff a commission of five percent of the gross rental on a lease if and when procured.
We turn to the evidence of the plaintiff on the agreement as to the amount of the compensation. The plaintiff testified:

*141 "Q. Before Mr. Mavrakos left for St. Louis, did you discuss the question of a lease with him? A. Yes, sir.
"Q. Did you tell him that the owners would not pay a commission? A. Yes, sir.
"Q. That he would have to pay the commission ? A. Yes, sir. * * *
"Q. Are you familiar with the usual and ordinary commissions in Jefferson City, Missouri, of the real estate brokers for obtaining leases or for leasing business property in Jefferson City? A. I am, yes, sir.
"Q. What is the usual and ordinary rate? A. Five percent of the amount of the lease, and in case of an option, it is five percent of the options when they are renewed, if they are renewed."
(Minimum schedule of commissions published by the Real Estate Board of Jefferson City was introduced in evidence).
"Q. Is that the schedule of fees in force in Jefferson City? A. That is right. This is the minimum fee schedule of the Jefferson City Real Estate Board. * * * (reading): `Where lease is made with the privilege of extension or renewal, the lessor shall pay the regular commission on the lease, and if the lessee shall exercise his privilege of extension or renewal, then at that time the lessor shall pay commission on the extension or renewal period of the lease. In computing commission on the extended or renewed period said extended or renewed period shall be regarded as a continuation of the original term, and shall not be regarded as an entirely new lease'.
"Q. What does that say; who pays the commission? A. Well, as far as I am concerned, the commission was agreed on before we started.
"Q. Who agreed with you? A. They understood.
"Q. What was said between you and Mr. Mavrakos with reference to a real estate commission? A. I told Mr. Mavrakos in the presence of his son and French Nelson they would have to pay the commission on this deal. * * *
"Q. How then would somebody from St. Louis coming to Jefferson City know how much they are going to pay? A. He didn't ask me.
"Q. As a matter of fact, you never talked about commission at all ? A. Yes, we did.
"Q. Tell us how; that is what I am trying to get at. A. I told him they would have to pay the commission.
"Q. Who is they? A. Mr. Mavrakos".
That part of plaintiff's petition alleging that defendant agreed to pay the usual and ordinary commission was read to the plaintiff and he was asked: "Is that true? A. Yes, sir." He testified further.
"Q. Now in your Paragraph 4 you state that you discussed the ordinary commission with the defendant at that occasion of that meeting on High and Madison Streets; is that true? A. I can't be sure we discussed the ordinary commission, but I did say they would have to pay the commission.
"Q. What is the ordinary commission? A. Five percent of the lease.
"Q. Did you tell them that at that time? A. I don't think. * * *.
"Q. You say here you discussed with the defendant as agent for owner of the defendant the ordinary commission at that meeting? A. I discussed he would have to pay the commission, the Hope estate wouldn't pay the commission.
"Q. Did you say that was the ordinary commission? A. Nothing more said about it.
"Q. Then it wasn't the ordinary commission? A. It was the ordinary commission.
"Q. What? A. Five percent.
"Q. Did you tell him at that time? A. No, sir. He didn't ask me.
"Q. Then it isn't the ordinary commission we are talking about? A. Yes, sir, it is. * * *.

*142 "Q. Did you tell Mr. Mavrakos he would have to pay the commission ? A. I did; yes, sir".
There was no evidence that the plaintiff and the defendant's agents ever agreed to pay "the usual and ordinary" commission, nor that such would be five percent on the gross rental of the lease if a lease were procured. Under the plaintiff's evidence the defendant never agreed to pay other than a commission. Assuming all the facts as alleged in the petition, plaintiff had the election to bring his cause of action either upon the theory of an express contract or upon the theory of an implied contract to recover in quantum meruit the reasonable value of his services. Lee-Schermen Realty Co. v. Rueffel, Mo.App., 176 S.W.2d 655, 656-657. But we note that he did not elect to declare upon an implied contract in the single count of his petition, as we have held above, nor did he plead a second count on the theory of quantum meruit. Having declared only on an express contract and not having established one, in that he failed to prove the alleged agreement as to the amount of compensation, the result is that plaintiff has failed to establish his cause of action as alleged. This omission was not waived and motions for a directed verdict were made by defendant at the close of plaintiff's evidence and again at the close of all the evidence. Therefore, the judgment rendered for him on the petition, as drawn cannot stand.
It appears from the record that plaintiff's claim for his alleged services might properly be established and submitted if his petition were amended to conform to the facts, as disclosed by his evidence. If such an amendment would entail a departure from the cause of action on an express contract to one in quantum meruit, such departure is no longer fatal to the plaintiff's cause of action.
Under the old code, amendments which would substantially change the cause of action or substitute a new one would constitute a departure and were not allowed. Boyd v. St. Louis Brewing Association, 318 Mo. 1206, 1211, 5 S.W.2d 46; Ross v. Cleveland & A. Mineral Land Co., 162 Mo. 317, 329, 62 S.W. 984. But even under the old code, amendments were liberally considered, and it was held that a petition for a real estate commission on the theory of an express contract, could be amended to allege a second count on the same transaction based on an implied contract without constituting a departure. Lee-Schermen Realty Co. v. Rueffel, supra. However, under the new code, the rule of departure has been entirely abolished and there is now no limitation of the scope of an amendment to a petition. "We expressly hold that the rule against departure is no longer to be enforced". White v. Sievers, 359 Mo. 145, 150, 221 S.W.2d 118, 121. See, also. Carr, Missouri Civil Procedure, Vol. 1, Section 214. Pursuant to the abolishment of that rule, a wife, having brought suit for divorce, was later permitted to amend her petition so as to substitute an action for separate maintenance. See the recent case of Kendrick v. Kendrick, Mo. App., 251 S.W.2d 329, 333. See, also, Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, wherein plaintiff in a personal injury action, after the close of all the evidence, was permitted to amend her petition to include a new theory of negligence to conform to the proof. Amendment to plaintiff's petition in the instant case to declare upon an implied contract and to recover on quantum meruit would not change the identity of the transaction, the parties to the action, the nature and extent of the services, nor the subject-matter as originally pleaded.
We find it necessary to reverse the judgment and we deem it in the interest of justice and within our discretionary power to remand this case for new trial on the plaintiff's petition if amended to conform to the views herein expressed. Lance v. Van Winkle, 358 Mo. 143, 151, 213 S.W.2d 401. In remanding a case for new trial with leave to amend, the Supreme Court in Doty v. American National Ins. Co., 350 Mo. 192. 205, 165 S.W.2d 862, 870, 143 A.L.R. 1062, said: "We do this on the authority of the rule that where it appears from the record that a plaintiff has rights growing out of the transaction but has misconceived *143 his remedy an appellate court has jurisdiction to remand the cause to permit the petition to be amended and the cause retried." See, also, Jensen v. Wilson Township, 346 Mo. 1199, 145 S.W.2d 372; Mann v. Bank of Greenfield, 323 Mo. 1000, 1014, 20 S.W.2d 502; Williams v. Walker, 333 Mo. 322, 62 S.W.2d 840; Fancher v. Prock, 337 Mo. 1119, 88 S.W.2d 179, 183; Byrne v. Prudential Life Ins. Co., Mo.Sup., 88 S.W.2d 344, 347; 5 C.J.S., Appeal and Error, § 1936, page 1452.
The judgment is reversed and the cause is remanded to the trial court with directions to permit the plaintiff to amend his petition, if he so requests, and to retry the cause in conformity with the views herein expressed, or, if the plaintiff does not desire to amend his petition, then to render judgment for the defendant.
All concur.
On Motion for Rehearing or to Transfer the Cause.
Plaintiff vigorously insists that the defendant preserved no objections on the ground that the petition declares on an express contract, and cannot now introduce that issue on appeal. He cites Section 509.500, R.S.Mo 1949, V.A.M.S., which provides that when issues are tried by express or implied consent of the parties, such issues shall be treated as raised in the pleadings, and amendments to conform to the evidence in such cases shall be liberally allowed at any time, and failure to so amend in such instances shall not affect the result of the trial on such issues.
The section cited limits its provisions to cases wherein the issues not pleaded are tried with the express or implied consent of the parties. In the instant case the defendant denied all the material allegations of the petition and was entitled to the preservation of all evidence tending to deny the petition and to support the defense pleaded. When, in the course of the plaintiff's evidence, it was brought out on cross-examination of plaintiff by defendant that the plaintiff and defendant at no time agreed on a fixed amount of plaintiff's commission or compensation or to any certain method of computing the same, it was not the duty of the defendant to object thereto on the ground that the petition declared on an express contract. On the contrary, the defendant was entitled to have that testimony preserved, as it tended to disprove the plaintiff's petition and to sustain the defendant's answer. Neither the plaintiff nor defendant offered any evidence on the reasonable value of the plaintiff's services. Thus it cannot be said that in failing to object, the defendant consented, expressly or impliedly, to try the case as one in quantum meruit. We believe Section 509.500 does not apply here as contended by the plaintiff.
It is true that defendant's motion for verdict at the close of plaintiff's evidence and again at the close of all the evidence, and also the motion for a new trial were too general to call to the attention of the trial court specifically the objection that the petition declared on an express contract and was not supported by the evidence of a mere implied agreement to pay the reasonable value of plaintiff's services. Boswell v. Saunders, Mo.App., 224 S.W.2d 125, 128. But this was a case tried without a jury. In the absence of a waiver of such objection by the express or implied consent of the defendant, which we have ruled above is not shown by the record, then Section 510.310(4) applies, which provides: "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court". See Supreme Court Rule 3.23. See, also, Greaves v. Huber, Mo.App., 235 S.W.2d 86, 91; Frank v. United Benefit Life Ins. Co., Mo.App., 231 S.W. 234, 240.
In addition to the authorities already cited in the opinion to support our finding that the petition declared on an express contract, we may include Brown v. Clark's Estate, Mo.App., 207 S.W.2d 530, 531; Hoyt v. Buder, 318 Mo. 1155, 6 S.W.2d 947; Macke v. Harris, Mo.App., 27 S.W.2d 1079; Cap-Keystone Printing Co. v. Tallman Co., Mo.App., 180 S.W.2d 802, 803, 804; Klein v. Term'l R. Ass'n, Mo.App., 268 S.W. 660, 663 (where the petition alleged an agreement to pay "the usual and customary" *144 commission, and "that the reasonable and customary commission for such services was 5 percent of the selling price"); Mc-Donald v. Benton Hotel Co., Mo.App., 247 S.W. 228.
The motion for rehearing or to transfer the cause is overruled.
All concur.