**H. Ray TULL, Plaintiff-Appellant,**

**v.**

**Mary CALDWELL, Defendant-Respondent.**

**No. 25035.**

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1968.

Motion for Rehearing and/or Transfer Denied Feb. 3, 1969.

Application to Transfer Denied April 14, 1969.

Carl Sapp, Scott Orr, Sapp, Woods, Dannov & Orr, Columbia, for appellant.

E. M. Brown, Columbia, Brown, Wright & Willbrand, Columbia, of counsel, for respondent.

**458**

SPERRY, Commissioner.

Plaintiff, H. Ray Tull, a licensed real estate broker sued defendant, Mary Caldwell (now Mary Caldwell Sapp), seeking a judgment in the sum of $2,000.00, alleged to be due him for the sale of defendant's 200 acre farm. The case was tried to a jury but, at the conclusion of plaintiff's evidence, the court, upon defendant's motion, directed a verdict for defendant. Plaintiff has appealed.

Plaintiff pleaded that, on February 19th, 1966, he contacted defendant regarding listing her 200 acre farm for sale; that defendant agreed that, if plaintiff effected a sale he should receive a commission therefor; that, on March 27th, 1966, plaintiff took Orian Smith and Frank Beebe, (Smith's father-in-law), as prospective purchasers, to the farm and showed it to them; that he advised said prospects of his agency and interest in the property and advised defendant that he was going to and had shown the farm to said prospects; that, thereafter, defendant contracted to and did sell the farm to Smith and Beebe, without informing plaintiff thereof; that the sale was made due to plaintiff's efforts while acting under his contract; that he has made demand for payment of his commission but payment has been refused and is due and owing. He prayed for judgment in the sum of $2,000.00 and costs.

Defendant filed answer denying the allegations of the petition.

Plaintiff testified to the effect that he was, at the time the transactions herein occurred, a licensed real estate broker in Missouri; that he carried on his real estate business at his farm home and in the office of his son Bob, a lawyer, in Columbia, Missouri; that his wife worked in Bob's office; that in 1964, he learned that defendant, whose husband had died, wanted to sell her farm of 200 acres; that, in 1965, he went to her farm home on more than one occasion to see her about selling the farm; that she was not home; that he left a note for her concerning the matter; that, February 15th, 1966, he telephoned her and it was agreed that he should come to see her about selling the farm; that he drove to the home on that Sunday morning; that a Mr. Kraft, a real estate broker was there, with a prospective buyer; that, after Kraft departed, plaintiff discussed the matter of *selling the farm;* that he told her that he had a prospective customer; that she agreed that he might sell it; that she told him that she wanted $40,000.00 net, and "she says your commission will have to be in addition to that; you'll have to get your commission". He stated that he told her that the regular commission for such sales was from five to six percent but that he wanted five percent, $2,000.00, and that he would price the farm at $42,000.00; that she would get $40,000.00; that she never mentioned Orian Smith as a prospect to whom she might sell the farm; that the prospect that he, at that time, had in mind, looked at the farm, but did not buy; that, after his first visit, he saw defendant several times at her home; that she never mentioned Mr. Smith; that, on one occasion when he was there a real estate broker, Murray, was there with a prospective buyer; that, about March 15th, he talked to Mr. Smith in his office at Columbia about selling him the farm; that he had had business transactions with Smith; that Smith said that he might trade defendant some property for the farm; that Smith had not seen the farm; that plaintiff told defendant about this suggested offer and that she was not interested in trading; that, on March 27th, plaintiff telephoned Smith, suggesting that they view the farm on that date; that Smith agreed; that plaintiff so notified defendant by telephone; that plaintiff met Smith and Beebe and they all drove to the farm in plaintiff's vehicle; that defendant was not home but left a note for plaintiff; that they viewed the farm; that Smith asked him to find out if defendant would take $42,000.00 for the farm and $3,000.00 for fifteen head of cattle; that, after they

left the farm, Smith told him that it was located too far from Columbia for him to be interested in it.

There was evidence to the effect that, on the following Saturday, defendant came to plaintiff's son's office in Columbia, stated that she wanted to know whether plaintiff would claim a commission on the sale of the farm; that her lawyer had told her that she would likely be sued for a commission; that she requested that plaintiff telephone her; that plaintiff saw defendant at her farm home the next day; that she told him that Smith had offered her $40,000.00 for the farm on the previous Thursday, (which would· be about four days after plaintiff showed the farm to Smith and Beebe); that plaintiff told her that he would expect to be paid a commission.

There was evidence to the effect that two other brokers had made efforts to sell the farm for defendant.

A contract of sale of this farm to Smith and Beebe, for the sum of $40,000.00, dated April 13th, 1966, was in evidence. It contained a provision whereby the purchasers agreed to indemnify defendant for any real estate commission she might be compelled to pay on this sale, together with all costs and expenses in connection therewith.

Defendant contends that plaintiff failed to make a submissible case because she pleaded and proved a conditional or contingent contract whereby the payment of commission is conditional on the broker obtaining a purchaser at a certain price; that plaintiff failed to secure a purchaser for that price; that before plaintiff may recover he must have proved a specific performance under the terms of his contract. She cites, among other cases, Proctor v. Gentry, Mo.App., 214 S.W.2d 746, where this court considered a situation very similar to this, on facts and pleading. There was a judgment for plaintiff. At p. 747 the court held that the petition failed to state a cause of action because

it was not alleged that plaintiff sold the property or found a buyer for it, and that it is well settled that one cannot recover on a contract without alleging performance on his part *or sufficient excuse for his non-performance*. The court quoted with approval language to the effect that one who lists property for sale at a given price with an agreement that the broker shall have a commission, and the broker brings about negotiations resulting in a sale for a less sum, the law will not allow the seller to reap the fruits of the broker's labor and deny him his reward; but that such rule does not apply to a conditional or contingent contract. The judgment was reversed *and the cause remanded.*

The defendant also cites Rosenblatt v. Multin, (Mo.App.) 222 S.W.2d 587. There was a directed verdict and judgment for defendant, affirmed by the appeals court. Plaintiff's pleading and evidence were to the effect that he was employed to sell property for $70,000.00 net to defendant, and to get his commission in addition. There was substantial testimony tending to prove that plaintiff was not the procuring cause of the sale, later made for $50,000.00, to one whom plaintiff claimed was his prospect.

At p. 592 the court held that the contract shown by the testimony was contingent upon plaintiff securing a purchaser ready, willing and able to pay $70,000.00 for the lot; that: "this he did not do". The court bottomed its decision on Hughes & Thurman v. Dodd, 164 Mo.App. 454, 146 S.W. 446, 447. In that case the evidence was that in November, 1910, defendant agreed with plaintiff brokers that they could sell his property for $5,500.00 and have a commission on that sum, and also have all over that amount they could get; that plaintiffs contacted Mr. Nelson, but were unable to bring about a sale; that Nelson abandoned the deal; that in January 1911, defendant sold the property to Nelson for $4,150.00; that plaintiffs had nothing to do with the final sale.

The court (at p. 448) held that there was evidence of a special contract between the parties for the sale of the property but that it was not performed by the production of a buyer who was willing and able to buy at the sale price agreed upon. The judgment was affirmed. The court said: "this case presents no evidence that defendant improperly *interfered* with the making of a sale by plaintiffs at the price stipulated, *nor that he prevented the strict performance of the contract.*" (Emphasis ours.)

It is noted that, in the Proctor case, supra, the court said (214 S.W.2d 748): "it is well settled that one cannot sue upon a contract without alleging performance upon his part *or sufficient excuse for non-performance*", (emphasis ours) and remanded the cause. The court in the Hughes case, in affirming the judgment, stated that there was no evidence that defendant improperly interfered with plaintiffs in attempting to make a sale or that he prevented the strict performance of the contract.

In O'Neal v. Mavrakos Candy Co., Mo. App., 255 S.W.2d 138, this court considered an appeal from a plaintiff's judgment in a court tried case, for a commission for the rental of real property. Plaintiff pleaded his employment by defendant to secure a lease on certain real estate for which it was agreed that plaintiff should receive the "usual and ordinary commission" for his services. A lease was entered into between defendant and plaintiff's customer and plaintiff sued for a commission of 5% of the amount alleged as having been received, alleging that to be the usual and ordinary commission allowed in that community. It was held that plaintiff failed to prove that 5% is the usual and ordinary commission paid in such cases as this, and the agreement alleged was not proven, and the judgment was reversed. However, the court said (p. 142), that plaintiff's claim for "services might properly be established and sub-

mitted if his petition were amended to conform to the facts, as disclosed by his evidence". The court pointed out that if such amendment should entail a departure from the cause of action pleaded in an express contract to one in quantum meruit, such departure is no longer fatal to the plaintiff's cause of action. Judgment was reversed and the cause was remanded for the filing of an amended petition in quantum meruit, if plaintiff so desired.

In O'Neal v. Mavrakos Candy Co., 364 Mo. 467, 263 S.W.2d 430, the supreme court (Judge Hyde) reviewed our decision in the same case. The court, at p. 432, stated that it was proper that the court of appeals, "in the exercise of its discretion * * * remand the cause to permit the petition to be amended to clearly state a claim on quantum meruit so that the cause may be retried on that basis". The judgment was reversed and the cause was remanded.

There is substantial evidence tending to prove that plaintiff procured buyers; that a contract of sale was consummated with them a few days after plaintiff showed the farm to said buyers; that the sale agreement was finally executed with the full knowledge of all parties thereto that plaintiff was claiming a commission for his services. From all of the evidence the jury could have found that defendant interfered with plaintiff's performance of his contract.

The court erred in directing a verdict for defendant. The judgment is reversed and the cause is remanded for a new trial with directions that plaintiff be permitted to amend his petition if he so desires.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.