STATE EX REL. HENRY F. CLARK, Appellant, v. GEORGE
L. OSBORNE ET AL., Respondents.

Kansas City Court of Appeals, January 10, 1887.

| 24a | 309 |
| 32a | 538 |
| 32a | 541 |
| 24 | 309 |
| 38 | 626 |

1. SCHOOL LAW—EXPULSION OF STUDENT—CONSTRUCTION OF REVISED
   STATUTES, SECTION 7166, AS TO APPEAL.—The statute relating to
   public schools (Rev. Stat., sect. 7166), permits the faculty to
   suspend or expel a pupil for "contumacy, insubordination, or
   immoral conduct," *provided*, that such student shall have the
   "same right of appeal to the board of·regents, as is provided in
   the case of a professor or teacher," and make the action of the
   board thereon final. *Held*, that notwithstanding that there is no
   right of appeal provided for a professor or teacher, the meaning of
   the statute is that a student when suspended or expelled by the
   faculty, may have his case heard by the regents, as the *professor's
   case would be heard*. *Held*, *further*, that his appeal is not the
   technical appeal known to the law in appealing from an inferior
   to a superior court, but is an informal demand upon the board of
   regents to hear his cause; and that they must hear it, as they would
   if it were a teacher before them on charges.

2. —— WHEN MANDAMUS MAY LIE—LEGALITY OF RULES ADOPTED
   BY BOARD.—In cases where the remedy by appeal provided for is
   not adequate, as in the case of the violation of a rule prescribed by

the board of regents for the government of the school, if the rule reaches beyond the board's proper sphere of action, the courts will interfere to prevent its enforcement. *Held,* that the rule violated in this case, which "prohibited students from attending parties, entertainments, or places of public amusement, except by permission," in so far as it assumed to exercise control over the student and govern her conduct *while under the parental eye,* was without authority, and *mandamus* will lie to compel a restoration. as a pupil, and all the rights and privileges as such.

APPEAL from Johnson Circuit Court, HON. NOAH M. GIVAN, Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion of the court.

O. L. HOUTS, for the appellant.

I. The writ should issue because relator has no other specific remedy. It is contended by respondents that Revised Statutes, section 7166, provides a specific remedy to relator, that of appeal to the board of regents. Section 7166 provides: In case of a student expelled by the faculty for "contumacy, insubordination or immoral conduct, such student shall have the same right of appeal to the board of regents as is provided in case of a professor or teacher, and the action of the board thereon shall in all cases be final." The statute makes no provision for an appeal by a professor or teacher to the board of regents; for the reason that the jurisdiction of the board of regents over the professors and teachers is original and not appellate. The board of regents is the only body authorized to employ or discharge professors or teachers and in case a teacher or professor should be discharged by the board of regents, an appeal to the same board would be an absurdity. It follows, therefore, that if a student should be expelled by the faculty, no appeal or other specific remedy is provided; for the student has the same right

of appeal to the board of regents, as is provided in the case of a professor or teacher. The professor and teacher has no right of appeal, therefore, the student has none.

II. The rule in question is not a reasonable and proper one, or within the proper sphere of action of the school officers; and is in no way connected with the proper management and successful operation of the school. *Dritt v. Snodgrass*, 66 Mo. 286; *Trustees of School v. People*, 87 Ill. 303; *Murphy v. Board of Directors*, 30 Iowa, 429.

III. "The directors of a school district are invested with power and authority to make and execute all needful rules and regulations for the government, management, and control of such schools as they may think proper, not inconsistent with the laws of the land." A board of regents and faculty of a state normal school are vested by the statutes with no greater power. Normal schools, like public schools, every child within certain ages has a right to attend under the law, subject only to reasonable rules. Directors of a school district have no authority to prescribe such a rule as the one in question. The rule cannot then be enforced in a normal school for the same reasons. *Dritt v. Snodgrass, supra.* (a) Only private institutions, by virtue of a contract to that effect, can prescribe and enforce such a rule.

SAMUEL P. SPARKS, for the respondent.

I. From the action of the faculty for the expulsion of his daughter, appellant had a right to appeal to the board of regents. 2 Rev. Stat. 1879, sect. 7166, p. 1413. Where there is an adequate specific legal remedy, mandamus will not lie. *Mansfield v. Fuller,* 50 Mo. 338; Moses on Mandamus, [Ed. 1867] 124. High's Extraordinary Leg. Rem. [Ed. 1884] sect. 10, p. 15.

II. The pivotal point in this case is, was the rule a reasonable one and within the sphere of the authority of

the board of regents? It is not contended but that the rule was salutary and a necessary regulation for the conduct of students from abroad, not under parental protection, but that it was not within the sphere of the authority of the board to adopt a rule for students residing with their parents, however salutary, so as to supersede the authority of the parent outside of school hours and after they had returned to their parents' control. A rule *ex vi termini* applies to all, without respect to person, who fall within its prescription, otherwise it is not entitled to be dignified with that name. The questions involved in this case are diminished to the single question : Had the regents the power to make a rule which should prescribe the conduct of a pupil in any case while under the parental roof or personal control of the parent? If they had, that is an end of the case, and the action of the circuit court should be sustained.

III. The claim involved in the petition, that resident students should be governed by a special code of rules, is absurd. Not only would it increase and greatly complicate the difficulties of controlling non-residents, by according superior rights and privileges to those who happen to be residents of the community, but it would also place in the hands of the latter unlimited facilities for injuring the school without providing a means of redress. For a state institution to admit such a principle, would be to warm within its own bosom a viper which would ultimately sting it to death.

IV. The claim that the authority to control does not extend beyond the school grounds, nor longer than the number of hours usually considered a school day, as the petition further assumes, is equally absurd, from the very nature of the case. The students occupy nearly the whole day in recitation. If lessons are prepared at all, the work must be done out of school, and during time not usually reckoned as school hours. Besides, the sources of corruption and moral pollution which endanger the life of any school of its class, lie without and beyond the school house walls. Sensible parents will not en-

trust their sons and daughters to the care of a school that lacks the power to guarantee proper moral and physical protection, as well as good intellectual training.

ELLISON, J.—This is an application for *mandamus*, the relator being a citizen residing within the limits of the State Normal school district number two, and is the father of Rosa Clark, a minor aged sixteen, residing with him, under his care, guardianship and control, and was, prior to the grievances set out in the petition, attending said school, as a pupil, duly enrolled as such, with the consent and by direction of relator. Respondents are the faculty and teachers of said school. The petition, continuing, states, that on said fourteenth day of March, 1884, while said Rosa Clark, relator's said daughter, was a pupil in said school and being instructed in the several branches of learning there being taught therein, the said respondents, as such teachers, professors and members of the faculty aforesaid, not regarding their duties in the premises, wrongfully, illegally, oppressively, wilfully, in abuse of their authority and contrary to law, and without just cause or excuse, did strike from the rolls of said school the name of said Rosa Clark, and then and there dismissed and expelled her from said school, and refused and still refuse to instruct, teach or in any manner recognize her as a pupil in said school, or to allow her to recite or take part in any of the exercises therein, for the following reason, and none other, to-wit:

"That said Rosa Clark did, previous to the date aforesaid, in the evening, after the said school had been dismissed for the day, and after she had returned from the school to her said father's home, and while under the care and control of her said father, attend, in company with her brother, a social party composed of the respectable people of the said city.

"That the said respondents, as the faculty aforesaid, had made a rule prohibiting students from attending parties, entertainments, or places of public amusement,

except by permission. That said rule had previously been adopted by said faculty and published by order of their board of regents, in the annual catalogue of said school, and it was for an alleged violation of this rule that said respondents dismissed and expelled said Rosa Clark from said school, and refused to teach or instruct her therein, or permit her to attend the same, and struck her name from its rolls, as aforesaid.

"Plaintiff states that said social party was made up of invited guests, and that their conduct was strictly moral, innocent, and inoffensive, and tended only to social culture and advantage, and that said Rosa Clark attended the same with the permission of this relator, her said father, with whom she then lived, and in whose care and custody she then was, and that she was accompanied by, and was under the protection of, her brother as aforesaid, and that she had a right to attend said party and respondents had no right or authority to dictate to, or control, her in the premises, and that the acts and conduct of said respondents, in dismissing and expelling her from said school as aforesaid, was an abuse of any authority conferred upon them by law or the regulations of said school."

The petition then proceeds to state that relator had demanded that his daughter be reinstated as a pupil, but that he was refused by respondents. It then prays for a *mandamus* compelling respondents to restore her as a pupil, and to all the rights and privileges as such.

Upon the petition an alternative writ was issued by the circuit court, the respondents filing the following demurrer thereto :

"Come now said respondents by their undersigned attorneys and demur to the alternative writ herein and for causes of demurrer say :

"1. Because said alternative writ does not state facts sufficient to entitle relator to relief sought therein or constitute any cause of action against respondents.

"2. Because relator has another specific legal remedy for the wrongs complained of in said alternative writ."

This demurrrer was sustained and relator appeals to this court.

Respondents make the point, though it is not urged to much extent, that the demurrer was properly sustained, for the reason that relator has a remedy by appeal from the action of the faculty to the board of regents.

The statute in reference to this, section 7166, is very unsatisfactory in its provisions. It permits the faculty to suspend or expel a pupil for "contumacy, insubordination or immoral conduct," "provided that such student shall have the same right of appeal to the board of regents as is provided in the case of a professor or teacher, and the action of the board thereon shall in all cases be final." But there is no right of appeal provided for a professor or teacher. They are tried in the first instance, by the board of regents and the board's decision is a finality. We are, however, inclined to give heed to the spirit, rather than the letter, of this statute, and hold that its meaning is, that a student, when suspended or expelled by the faculty, may have his case heard by the regents, as the professor's case would be heard. His appeal is not the technical appeal known to the law in appealing from an inferior to a superior court, but is an informal demand upon the board of regents to hear his cause, and they must hear it as they would if it were a teacher before them on charges.

II. But notwithstanding this ; would an appeal in the case presented in the application be an adequate remedy for relator's injury ? The complaint here, while in name, is against the faculty, is, in reality, more against the regents themselves, for the faculty have only taken action which they were compelled to take by reason of the regents having adopted the rule under which relator's daughter has been deprived of the benefit of the school. The facts are all admitted. The rule which had been adopted by the regents has confessedly been violated and on an appeal to the regents there would be nothing for them to

act upon, unless, indeed, they should annul the rule; a thing unreasonable to suppose they would do, as we must presume that, having made it for just this sort of case, they would stand by it. It is reasonable and proper to indulge this presumption. I am of the opinion that an appeal to the regents, under the facts of this case, would not afford relator an adequate remedy.

In order that relator should prevail in this proceeding it should not only appear that he has no adequate remedy otherwise than by this writ, but it must be seen that he "has a clear legal right to the performance of a particular act or duty at the hands of the respondent." High on Ex. Legal Remedies, sect. 10. This brings us to the question as to the legality of the rule complained of and of the authority of the board to adopt it. If the rule reaches beyond the board's proper sphere of action, if it is without the pale of their authority, the courts will interfere to prevent its enforcement. *King v. Jefferson City School Board*, 71 Mo. 628; *Morrow v. Wood*, 35 Wis. 59; *Trustees, etc., v. VanAllen*, 87 Ill. 303. By the writ it will be seen that the student attended the party in the evening after school had been dismissed for the day, and after her return to her father's house and the resumption of his control over her. That the entertainment was social, composed of respectable people and designed for their mutual culture and advantage.

Under this state of facts, confessed by the demurrer, we are not able to distinguished this case from that of *Dritt v. Snodgrass* (66 Mo. 286). It is held in that case, that, while there is an unquestioned right to adopt and enforce needful rules for the control of the pupils while under charge of the teacher, yet, "when the pupil is released and sent back to his home, neither the teacher nor directors have the authority to follow him thither, and govern his conduct while under the parental eye." It has also been held by the Supreme Court that the rules do not necessa-

rily cease to operate immediately upon the dismissal of the school, but may continue till the "parental control is resumed." *Deskins v. Gose*, 85 Mo. 485.

But, as before stated, parental authority had been resumed in this case, as the pupil had returned to her home and left there for the party, in company with her brother, with her father's consent.

Counsel urge that there is a distinction between *Dritt v. Snodgrass* (*supra*), and this case, as in that case it was a local public school, where the children are all supposed to be attending from their homes, while in this, it is a state institution designed to receive students from a distance and necessarily taking them from under the control or authority of the parent. I cannot see the force of the point. If the parent entrusts his child beyond his immediate supervision, he will either place him under the authority of another or leave him free to control himself.

That is a matter for the parent. The teacher only stands *in loco parentis* within the sphere of his duty as a teacher. As has been remarked in other cases, the matter would be different in a private school.

There, the teacher may make his own terms; and in boarding schools where the student's whole time is spent within the environs of school, it may be a necessity for the teacher to take entire supervision of the student. But in a public institution, supported and maintained by people at large, different rights exist, and to which different legal principles apply.

The judgment is reversed and the cause is remanded with leave for respondents to answer. All concur.