STATE EX REL. GLADYS ROBERTS, APPELLANT, v. JOHN WILSON ET AL., RESPONDENTS.*

In the Springfield Court of Appeals. Opinion filed July 6, 1927.

10

*Corpus Juris-Cyc. References: Mandamus, 38CJ, p. 561, n. 81; p. 592, n. 45; p. 736, n. 18 New; Schools and School Districts, 35Cyc, p. 1110, n. 91; p. 1118, n. 71; p. 1126, n. 42 New.

*D. E. Moberly* and *L. B. Shuck* for appellant.

*Hiett, Lamar & Covert* for respondents.

BRADLEY, J.—Appellant relator brought mandamus to compel the principal and directors of school district No. 107 in Texas county to deliver to her an eighth grade graduation certificate, called a certificate of attainment, and to remove certain conditions upon the release of her grades for the first year of high school. Preliminary writ issued, but upon final hearing the relief asked was denied and relator appealed.

School District No. 107 is a common school district and in 1923, by its board of directors, made arrangements for a two years' high school course which was approved and accredited by the State superintendent. Relator resided with her parents in district No. 107 and completed the work required in the grades, and during the school year of 1923 and 1924 did the required work for the first year of the high school. But because relator did not pay a charge of $20, said charge being made by order of the board of directors, she was refused the eighth grade graduation certificate or certificate of attainment and also the release of her grades for the high school work was refused. During the school years of 1924 and 1925; 1925 and 1926; 1926 and 1927, relator attended the Cabool High School in Texas county, but cannot graduate until she has received the certificate of attainment and credit for her first year of high school work. The county superintendent made out the certificate of attainment for relator and delivered it to Roy Wall, who was then the principal of the school in district No. 107, for his signature, but Wall, by order of the then board of directors, refused to sign and deliver the certificate. All of relator's troubles respecting her grades occurred with the predecessors of the present principal and directors, except respondent Grisham who was a member of the board at the time. But before instituting the cause now here relator, through her counsel, asked the present principal, respondent Wilson, to sign and deliver to her the certificate of attainment and to remove the condition upon the release of her high school credits. Respondent Wilson thereafter discussed the matter with the respondent directors and relator's request was refused.

Prior to the school year of 1923 and 1924 district No. 107 did not maintain a high school, but between the school election of 1923 and the beginning of the school term for 1923 and 1924 the board of directors made arrangements for the purchase of the necessary equipment to maintain a two years' high school course and the high school

was established and was inspected and approved by the State superintendent. There were no public funds for the purchase of the equipment required for the high school and the directors personally arranged for the equipment which amounted to about $400. It was ordered by the board that each pupil attending high school for the school term of 1923 and 1924 be charged a tuition fee of $20, which, with the aid of box suppers, entertainments, etc., it was estimated, would be sufficient to reimburse the directors for the equipment purchased. The salary of the teacher of the high school was paid out of the district funds.

. Relator is a minor and no next friend was appointed. It is stated in the petition, however, that relator filed her petition "through her natural guardian and father, Joe Roberts," but his name does not appear in the caption or elsewhere in the pleadings, except as stated. In Taylor v. Mo. Pac. R. Co., 257 S. W. 511, we held that an infant could prosecute a cause by the father or natural guardian without the formality of having the father appointed as next friend, but no point is made here on relator's infancy hence we shall not deal further with the subject.

Under the facts will mandamus lie to compel respondents or either of them to deliver to relator the certificate of attainment properly executed and remove the condition placed upon the release of her high school credits? If the requirement of the payment of the $20 tuition was a proper and legal condition precedent to the delivery of the certificate of attainment then its delivery was properly refused. And the same is true respecting the removal of the conditions placed upon the release of relator's high school credits. Section 1 of article 11 of our Constitution made it the duty of the General Assembly to establish and maintain free public schools for the gratuitous instruction of all persons in the State between the ages of six and twenty years. Pursuant to this mandate free public schools have been established throughout the State, and district No. 107 is one of the free public schools established for gratuitous instruction. The right of children, of and within the prescribed school age, to attend the public school established in their district for them is not a privilege dependent upon the discretion of any one, but is a fundamental right which cannot be denied except for the general welfare. [Lehew v. Brummell, 103 Mo. 546, 158 S. W. 765.] The law of course contemplates that the money necessary for the maintenance of a public school come from the revenue provided by law, that is by taxation. If, however, a part of the money is provided from sources not contemplated by the law such fact would not alter the character of the school as a public school. [35 Cyc. 812.] If the public character of the high school established in district No. 107 was not altered by the additional money provided by the directors in their individual capacity then neither the principal nor the directors had

any lawful right to exact of relator the tuition demanded. As we have seen the public character of the high school was not changed because a part of the funds for its equipment came from sources other than public taxation, therefore, no right existed in the board or any one to require payment of a tuition fee by relator.

We might state in passing that counsel for respondents do not contend that the public character of the high school was altered by the additional money provided, but this question is given considerable space in the brief of relator's counsel and we deemed it proper to make disposition of it.

The refusal to pay the tuition fixed by the board of directors was no legal justification for refusing to give relator her certificate of attainment or for refusing to release her high school credits. And as to the refusal to deliver her certificate of attainment there was no semblance of excuse, moral, or legal. Relator was entitled to her certificate of attainment regardless of whether or not she attended the high school. This certificate was earned by completing the work required in the grades and had no connection with the high school, except to show that relator was entitled to enter the high school.

Respondent directors contend that there is no legal duty enjoined upon them by the law to do anything relative to the certificate of attainment, and that, therefore, mandamus will not lie as against them so far as concerns said certificate. No specific contention is made respecting the duty of the board of directors relative to the releasing of relator's high school credits. We shall consider the certificate and high school credits separately.

Section 11346, Revised Statutes 1919, provides that the county superintendent shall have general supervision over all the schools of his county except in city, town and village schools employing a superintendent who devotes at least half of his time to the direct work of supervision. By section 11346 the county superintendent had general supervision over the public school maintained in district No. 107. Section 11347 makes it the duty of the county superintendent to adopt a course of study and a plan for grading the schools of his county and to forward to the State superintendent copies of the course of study adopted and one copy to each district clerk and one copy to each teacher employed in the county. And said section 11347 gives the county superintendent the authority to require that the course of study adopted by him be followed as nearly as practicable. Also section 11347 makes it the duty of the county superintendent to inaugurate and maintain a system of final examinations and graduation of pupils who complete the State course of study for rural schools.

Supervision of instruction in the public schools is vested in the State board of education of which board the State superintendent

is president, and the Governor, Secretary of State and Attorney-General are *ex officio* members. [Sec. 11398, R. S. 1919.] In practice, however, the duty to supervise instruction in the public schools is performed by the State superintendent. Pursuant to the duties resting upon the county superintendent of Texas county and the State superintendent, courses of study were prescribed and promulgated for the common and high schools of Texas county. Relator fulfilled every requirement specified by the law and the course of study for rural schools to entitle her to receive the certificate of attainment. The county superintendent performed his duty relative to the certificate by issuing and delivering the same to the principal of the school district No. 107 for the purpose of the principal's signature before delivery to relator. The then principal refused to sign and deliver the certificate because of the order of the then board of directors.

We do not find any law specifically placing upon the board of directors any duty relative to the issuing of certificates of attainment, but section 11135, Revised Statutes 1919, among other things, provides that the board of directors shall have power to make all needful rules and regulations for the grading and government of the school in their district. One rule or regulation made by the directors of district No. 107 was that relator should not receive her certificate of attainment until the $20 tuition was paid. No authority in law existed for making such rule and when relator had met every requirement for her certificate of attainment, except to pay the $20 she was entitled to receive it and it was the plain legal duty of the principal to sign the certificate and deliver it. But the order of the board was the principal's excuse for not signing and delivering the certificate and the inference from the record is that the refuge of the principal was not an unwelcome one. But be that as it may we shall indulge the presumption that the principal would have signed and delivered the certificate except for the order of the board of directors. If it be true that the law cast no duty upon the board to do anything respecting the certificate of attainment, as learned counsel contend, then the board went beyond its authority when it made the order that the certificate should not be delivered to relator until the $20 tuition was paid.

Mandamus will lie to compel the undoing of a thing wrongfully and improperly done when such wrongfully and improperly done thing precludes or prevents rights to which one is under the law entitled. [State ex rel. v. Homer, 249 Mo. 58, l. c. 65, 155 S. W. 405; State ex rel. v. Phillips, 97 Mo. 331, 10 S. W. 855; 10 C. J. 592.] Unless another remedy is fully adequate mandamus will lie, and whether another remedy is adequate is a question appealing to the judgment and discretion of the court when the facts are presented. [State ex rel. v. Homer, supra.] By making the order not to de-

liver relator's certificate of attainment until the $20 was paid the board of directors became responsible for the failure of the principal to discharge a plain legal duty. Since self preservation is the first law of nature no teacher, whatever his rank, would likely be inclined to proceed contrary to the positive orders of his board of directors. Relator is entitled to redress by some remedy provided by law. It would be a reflection upon the law itself to say that there is no remedy for her. District No. 107 is a body corporate and relator's rights did not vanish with the change of the personnel of principal and directors. Relator demanded her rights of the present principal and board of directors, respondents here, and these rights were refused. By refusing to deliver the certificate of attainment and release the high school credits respondents gave their approval to the wrongful conduct of their predecessors in office.

Relator offered in evidence pertinent portions of the State course of study for high schools promulgated under the law by the State superintendent, but on objection this offering was refused. No ground for the objection was stated and no reason given by the court for the refusal. The portion offered is printed in the record and one paragraph is as follows: "A certificate of graduation issued by the county superintendent must be required of all pupils for entrance, except those who have completed the eighth grade in a system over which the county superintendent has no jurisdiction. Students entering from other high schools shall receive credit given to the school from which they enter as indicated in the circular of high school credits issued by the State superintendent of schools. In no case shall more credit be given than is recommended in this circular, without a thorough examination. No examination shall be given later than the first week of school and all questions and papers shall be kept on file as a part of the permanent record."

Thus it appears that relator's eighth grade graduation certificate, that is, the certificate of attainment, is of vital importance to her. We think that under the facts mandamus will lie against respondents to compel the delivery of the certificate of attainment to relator.

Will mandamus lie to compel the removal of the condition upon the release of relator's high school credits? The question here presented is, in effect, disposed of, supra. We have already ruled that the board of directors had no lawful right or authority to exact tuition of relator for attending the high school. Such being the case there is no ground for refusing to remove the condition upon the release of relator's high school credits. By refusing to remove the condition upon demand or request respondents, as in their refusal to deliver the certificate of attainment, approved the action of their predecessors and the condition became their condition not only by succession but by ratification and approval.

It appears that relator sought the advice of the State superintendent as to her troubles. At the trial she sought to introduce a letter by the State superintendent to the former principal, Wall, but the letter was excluded. It is not contended here that the letter was competent as evidence, but it is printed in the records and we copy it here as supporting our own construction of the law relative to the right of the respondents and their predecessors to exact payment of tuition by relator. Under date of September 24, 1924, the State superintendent wrote principal Wall as follows:

"On June 23, 1924, I sent Miss Gladys Roberts the following letter: 'I wish to advise you that students living within a school district where there is a high school may attend high school without the payment of tuition.' It is the opinion of this department further that the superintendent of the school or the school board has no authority to withhold grades of a student under such conditions. I again want to repeat that a student living within a district cannot be charged tuition for attending high school, and this department recommends that you remove the condition with reference to Miss Gladys Roberts so that she may receive full credit for the work she has completed. I note that my inspector approved this school November 13, 1923, and classified the school as an unclassified school with six approved units."

It is our conclusion that mandamus will lie against respondents to compel the removal of the condition upon the release of the high school credits.

We do not, by our conclusions in the disposition of this cause, intend to approve the conduct of relator's father in refusing to share with his fellows the additional burden required for the high school, but whatever may be said of the moral feature, he was clearly within his legal rights in refusing to pay the tuition. The justice of his conduct is wholly a question for his conscience. The cause here concerns relator and not her father.

The judgment should be reversed and the cause remanded with directions to set aside the order and judgment for respondents and to issue a peremptory writ. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.