**STATE of Missouri ex rel. Ronnie SAGES-ER, a minor, by his Next Friend, Donald Sageser, Relator-Respondent,**

**v.**

**W. D. LEDBETTER, Jess Bair, Virgil Hasselbring, A. L. Gurley, Dean Greathouse, Nelson White, Bill Campbell and Kaare Gjeruldsen, Respondents-Appellants.**

**No. 10113.**

Missouri Court of Appeals, Springfield District.

Oct. 31, 1977.

Motion for Rehearing or to Transfer Denied Nov. 29, 1977.

Application to Transfer Denied Jan. 9, 1978.

Robert P. Baker, Sarcoxie, for relator-respondent.

Jon Dermott, Ron E. Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for respondents-appellants.

Before STONE, P. J., and HOGAN and TITUS, JJ.

STONE, Presiding Judge.

In this proceeding instituted in the Circuit Court of Jasper County, relator Ronnie Sageser (hereinafter Ronnie) sought a writ of mandamus to compel respondents, Virgil Hasselbring, A. L. Gurley, Dean Greathouse, Nelson White, Bill Campbell, and Kaare Gjeruldsen, the members of the board of education of the Sarcoxie R–2 School District (hereinafter collectively referred to as the board), W. D. Ledbetter, the superintendent of schools for that district, and Jess Bair, the principal of Sarcoxie High School at the time of suit, to execute and deliver to relator Ronnie a diploma evidencing his graduation from that school. Relator's petition was filed on May 27, 1975; and, on the same date, an alternative writ issued. In due time, respondents filed their return in which they asserted, inter alia, (a) that relator Ronnie had "failed to comply with all requirements for graduation, to-wit, attendance for four complete years," in that he had "attended only three quarters of his eleventh year and was suspended, failed to return, and was never readmitted during said eleventh year," (b) that "relator need only to successfully complete one additional quarter to satisfy the graduation requirements," and (c) that respondents were "willing to permit relator to attempt completion of said graduation requirements upon proper behavior by relator." Following a plenary hearing upon the issues joined, the court found the issues in favor of relator and made the alternative writ absolute. Respondents nisi appeal.

Ronnie, born on June 20, 1957, was 14 years of age when he entered Sarcoxie High School in the fall of 1971. Although in the course of trial references were made to prior "behavior problems" with Ronnie which were the subject of discussions in superintendent Ledbetter's office in one of which Ronnie's father also participated, the single incident that precipitated this litigation occurred in March 1974 during Ronnie's junior year. At the close of one of Ronnie's band classes, his music instructor David Raper told Ronnie (so he testified) "to go in on the stage and take the chairs from the stage into the bandroom," whereupon "I [Ronnie] threw my coat down, went in to get the chairs, then I got took to the office [of Jerry Smith, the then principal of Sarcoxie High School] for throwing my coat down disrespectfully . . . ." In Ronnie's presence, principal Smith questioned instructor Raper at length about the foregoing incident and concluded that by his action Ronnie had shown disrespect for Raper, in fact had defied him. Apparently having in mind also that "there had been other problems [with Ronnie] throughout the year," principal Smith summarily suspended Ronnie for three days as he (Ronnie) remembered it or for an indefinite or indeterminate period according to Smith's recollection. The principal explained that this indefinite period normally would run from one to ten days.[1]

Either the next day by relator Ronnie's account, or "about five days later" according to principal Smith, the latter called Ronnie's home and requested that he report to the principal's office. Upon trial, principal Smith recalled that, when Ronnie did report, "his attitude [was] that of indifference toward returning to school and behaving"—in short, that "his attitude hadn't improved," so Smith told Ronnie "to go home until his attitude improved." Ronnie's recollection was that, in the course of this meeting, principal Smith had exclaimed,

---

1. At the time of the incident under discussion, § 167.171, RSMo 1969, V.A.M.S., provided, inter alia, that "[t]he school board in any district, by general rule and for the causes provided in section 167.161 [i. e., 'for conduct which is prejudicial to good order and discipline in the schools or which tends to impair the morale or good conduct of the pupils'] may authorize the summary suspension of pupils by principals of schools for not to exceed ten days . . . ." In the case at bar, neither the transcript nor the briefs of the parties disclose whether or not such authorization had been extended to principal Smith.

"You don't even know what you are doing here, do you" and, when Ronnie agreed and answered "No," the principal "just said, '[w]hy don't you just check out your books and go home.'" Although the principal declared that Ronnie's check-out and withdrawal were voluntary and without compulsion by any school official, certain portions of the principal's testimony cast doubt upon that characterization of Ronnie's withdrawal.[2] But, regardless of whether the principal's above-quoted utterances to Ronnie constituted a mere suggestion, an admonition or a command, Ronnie did "go home" after having completed a "checkout form" obtainable only from the principal or upon his authorization. This "checkout *form*" was dated April 1, 1974, which was approximately eight weeks prior to the last day of the 1973–74 school year.

Ronnie reentered Sarcoxie High School in September 1974, was listed as a senior, continued in school through the 1974–75 academic year, and (with his academic credits from the three previous years) earned the twenty units of credit required for graduation. However, he was denied a diploma (so superintendent Ledbetter declared) because he had not completed "eight semesters of attending" as prescribed "in the policy that is made by the Board of Education" (hereinafter the eight-semester requirement).

When Ronnie's parents learned that he would not graduate with his class, one of the parents attended a meeting of the board of education and requested that the board waive the eight-semester requirement and give Ronnie's diploma to him, but the board refused to do so. However, acknowledging that Ronnie had satisfied all other requirements for graduation, superintendent Ledbetter declared that, if Ronnie would *enroll* for "[e]xactly the amount of time that was lacking from the time he dropped out [April 1, 1974] until the end of school which, I believe, [was] eight weeks, give or take a day or two," he would receive his diploma.

Since the Sarcoxie eight-semester requirement hatched this controversy, it becomes both appropriate and necessary to note the evidence concerning its origin, meaning and prior enforcement. We observe initially that the eight-semester requirement was *not* imposed or ordained by statute, but was a requirement for graduation formulated and prescribed by the Sarcoxie Board of Education (so superintendent Ledbetter declared) pursuant to a *recommendation* nestling in a footnote to the last sentence of paragraph 17, "High School Graduation Requirements," in the *Handbook for Classification and Accreditation of Public School Districts in Missouri* (1973) published by the Missouri State Board of Education, that sentence and footnote reading as follows:

"The local board of education may require more than 20 units, adopt specific course requirements, and/or specify the number of semesters of attendance ** re-
"** Eight semesters of attendance after grade eight are *recommended.*" (All emphasis herein is ours.)
quired for graduation from their local school district."

Inasmuch as the proper disposition of this appeal does not involve or depend upon the wisdom vel non of this recommendation, the acceptance of which mandatorily herded all high school students, without regard to ability, aptitude, ambition, intellect, motivation, performance or prior scholastic record, onto the same conveyor belt geared to the pace of the mediocre or average student, we eschew comment concerning its adoption by the Sarcoxie board.

In fact, the Sarcoxie school board minutes of *August 13, 1968,* revealed that the board *then* adopted the requirement of "*4 years* in one or more high schools for high school graduation." However, on *February 12, 1974,* the board also adopted the above-quoted *eight-semester* recommendation in the *1973* handbook of the State Board of Education and included that adopted recommendation in the particularized "Gradua-

2. E. g., when asked on cross-examination "[d]id you instruct Ronald Sageser to check out of school," principal Smith responded "I don't re-

member whether I did or didn't"; and, in one entry book, Ronnie's name was listed with the comment "dropped 4/1/74."

tion Requirements for Sarcoxie High School" which concluded as follows: "Each student shall attend school for *four years* in grades nine and above. These graduation requirements are to be implemented July 1, 1974." [3] This sheet neither defined "attend school" nor offered any elucidation as to its intended meaning in the quoted context.

Respondents' position in this proceeding (as *initially* stated by superintendent Ledbetter) [4] was that, by reason of Ronnie's absence during approximately the last eight weeks of his Junior school year, he did not satisfy the four-year requirement and will not be entitled to receive a diploma until he does. Thus, Ledbetter initially declared that relator Ronnie would be required to attend Sarcoxie High School for "exactly" the additional number of school days that he missed in his Junior year from his suspension or "checkout" on April 1, 1974, to the end of that school year. However, Ledbetter subsequently conceded not only that the eight-semester requirement did *not* demand or necessitate any *attendance* but also that relator Ronnie already had earned the twenty units of credit which constituted and satisfied the "measure of academic achievement" required for graduation, from which it followed that it would not be necessary for Ronnie to earn any additional units of credit, pass any courses in which he might be enrolled, or for that matter even attend any classes. [5] Thus, it becomes plain that the additional requirement of *enrollment* for eight weeks imposed by the school authorities would do no more than work an exercise in futility which would benefit neither the school district nor relator Ronnie and thus would fly in the teeth of the commonsense maxim that the law does not require the doing of a useless thing. [6]

Although the foregoing is dispositive of this appeal, the earnest presentations of counsel move us to note other record evidence pointing to and supporting the same conclusion. At a school board meeting on October 10, 1972, a motion was made, seconded and carried "that a pregnant girl not be allowed to *enroll* in school. If pregnancy occurs after the beginning of a semester, the student will be allowed to finish the semester." Supt. Ledbetter conceded that, during the three years prior to trial of this proceeding, four girls, identified by name in the transcript, had been graduated with a diploma although they had not *attended* eight semesters. One of those four girls who had become pregnant, had missed the last few weeks of the 1973–74 school year, but had graduated with her class in 1975. [7] Relator Ronnie likewise had missed

3. Since the litigants and their counsel have drawn no distinction between the *eight-semester requirement* and the *four-year requirement*, neither do we.

4. No member of the board of education testified.

5. [Relator's atty.] "Q. . . . [I]f this decision in this case goes against my client, you are going to require him to enroll, aren't you?

[Supt. Ledbetter] "A. Yes, sir.

"Q. Do you care whether he shows up at school?

"A. Yes, I care, we'd like to encourage him to be there. We are not going to say that a certain number of days he's got to be there.

"Q. In other words, if he's not there you are going to give him his diploma anyway, aren't you?

"A. Probably, yes, if he's *enrolled* eight semesters. . . . I could not deny him his diploma if he *enrolled* eight semesters unless the Board revised the policy."

6. *C. Bewes, Inc. v. Buster*, 341 Mo. 578, 585, 108 S.W.2d 66, 70(2) (1937); *Acorn Printing*
Co. v. Brown, 385 S.W.2d 812, 819 (Mo.App. 1964); *Maddux v. Gardner*, 239 Mo.App. 289, 298, 192 S.W.2d 14, 19 (1945); *Woolery v. Todd*, Mo.App., 139 S.W.2d 1005, 1007(2) (1940); *Citizens' Sec. Bank of Englewood v. Gatewood*, Mo.App., 36 S.W.2d 426, 428(2) (1931), cert. quashed 333 Mo. 207, 62 S.W.2d 756 (banc 1933). See *Lambert v. Travelers Fire Ins. Co.*, 274 F.2d 685, 688 (5th Cir. 1960); *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 266 F.Supp. 79, 82(6) (S.D.N.Y.1967); *Kilpatrick Bros., Inc. v. Poynter*, 205 Kan. 787, 473 P.2d 33, 40 (1970); *Keel v. Independent Life and Accident Ins. Co..*, 99 So.2d 225, 227 (Fla. 1957).

7. Concerning this girl's graduation, superintendent Ledbetter testified, in pertinent part, as follows:

[Relator's atty.] "Q. But she was not in *attendance* at Sarcoxie High School?

[Supt. Ledbetter] "A. She was not in the building. No sir, that's right. She was never dropped from *enrollment*, as far as being dropped; she was just absent for those days.

the last few weeks of the 1973–74 school year, but contrawise had been denied graduation with the 1975 class.

■ Although respondents assert that mandamus is inappropriate, the transcript establishes that relator had satisfied all academic requirements for graduation and that respondents rely solely, albeit mistakenly, on the eight-semester requirement to justify and support their denial of a diploma to relator Ronnie. Within reasonable limits a school board may determine graduation requirements but where, as here, a rule is applied or enforced unreasonably, capriciously, arbitrarily or inequitably to deny a diploma to a qualified candidate, mandamus is an appropriate remedy. *State ex rel. Roberts v. Wilson,* 221 Mo.App. 9, 297 S.W. 419 (1927).[8] See also *State ex rel. Clark v. Osborne,* 24 Mo.App. 309 (1887), on second appeal after remand 32 Mo.App. 536 (1888).[9] To the same effect, see other authorities cited marginally.[10] Finding and concluding that no other remedy would be as effective, convenient and beneficial as that sought by mandamus, relator appropriately initiated this proceeding. *State ex rel. Keystone Laundry and Dry Cleaners, Inc. v. McDonnell,* 426 S.W.2d 11, 15(5) (Mo.1968); *State ex rel. M. B. v. Brown,* 532 S.W.2d 893, 895(2) (Mo.App.1976); *State ex rel. Marcum v. Sappington,* 261 S.W.2d 385, 390(3) (Mo. App.1953).

The judgment of the circuit court making the alternative writ of mandamus permanent should be and is affirmed.

HOGAN and TITUS, JJ., concur.

*On Motion for Rehearing or to Transfer*

STONE, Presiding Judge.

The burden of appellants' motion for rehearing or to transfer is that the trial court expressly declared that the eight-semester requirement was unreasonable, whereas we have affirmed the trial court's judgment on another basis, i. e., the unreasonable and discriminatory *application* of that requirement to relator Ronnie under the specific circumstances shown in the transcript.

■ In appellate review of this court-tried case, our overriding concern is whether the trial court reached the right result and *not* whether the reason assigned by that court was correct or incorrect.[11] Regardless of the theory on which the judg-

[The Court] "Q. Just a minute. How did she comply with the eight-semester rule if she wasn't in the Sarcoxie High School building?
[Supt. Ledbetter] "A. Sir, she didn't in the terms that we are speaking, the same as the other three that he mentioned didn't. She didn't comply in the terms of the *attendance* in the school building; she did comply as far as being *enrolled.*"

8. In *Roberts,* when the school board refused to deliver a grammar school graduation certificate to student-relator because she refused to pay a tuition fee set by the board, the student sought a writ of mandamus compelling issuance of the certificate by the board. Upon appeal from the circuit court's denial of the writ, the appellate court reversed and remanded with direction to issue a peremptory writ.

9. In *Clark,* when the board of regents of a normal school expelled the student-relator for violating a regulation forbidding students to attend parties, etc., "except by permission," mandamus was sought to compel her reinstatement. On appeal from the trial court's sustention of a demurrer to relator's application for the writ, the case was reversed and remanded. 24 Mo.App. 309. The subsequent judgment of the circuit court making the alternative writ perpetual was affirmed on the second appeal. 32 Mo.App. 536.

10. *Valentine v. Independent School Dist. of Casey,* 187 Iowa 555, 174 N.W. 334 (1919), *aff'd after remand* 191 Iowa 1100, 183 N.W. 434 (1921); *Ryan v. Board of Education,* 124 Kan. 89, 257 P. 945 (1927); *Hamlett v. Reid,* 165 Ky. 613, 177 S.W. 440 (1915); *People ex rel. Cecil v. Bellevue Hospital Medical School,* 60 Hun. 107, 14 N.Y.S. 490, *aff'd,* 128 N.Y. 621, 28 N.E. 253 (1891); 68 Am.Jur.2d *Schools* § 217 (1973); 52 Am.Jur.2d *Mandamus* § 250 (1970).

11. *State ex rel. Patterson v. Tucker,* 519 S.W.2d 22, 24(1) (Mo.App.1975); *State ex rel. Pope v. Lisle,* 469 S.W.2d 841, 842(1) (Mo.App. 1971); *White v. Smith,* 440 S.W.2d 497, 512(21) (Mo.App.1969). See *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318(12) (Mo. banc 1964); *Producers Produce Co. v. Industrial Commission,* 365 Mo. 996, 291 S.W.2d 166, 170(1) (banc 1956); *Webb v. St. Louis County Nat. Bank,* 551 S.W.2d 869, 877(8) (Mo.App.1977); *Drydale v. Kiser,* 413 S.W.2d 506, 507(2) (Mo.1967).

ment nisi was based, it should be affirmed if, on the evidence, such result properly could have been reached. *C__ L__ R__ v. L__ B__ R__,* 555 S.W.2d 372, 375(1) (Mo. App.1977); *Ehrle v. Bank Bldg. & Equipment Corp. of America,* 530 S.W.2d 482, 490–491(7) (Mo.App.1975); *Godsy v. Godsy,* 504 S.W.2d 209, 211(1) (Mo.App.1973).

Wholly aside from the reasonableness vel non of the eight-semester requirement, the transcript on appeal preserves and presents evidence that in our considered opinion clearly and convincingly demonstrated that the *application* of the eight-semester requirement to relator Ronnie was unreasonable and discriminatory in the specific circumstances shown.

With such evidence patently justifying and adequately supporting the judgment nisi, we deliberately chose to rest our heretofore-recorded conclusion on that unreasonable and discriminatory *application* of the eight-semester requirement, rather than essaying, *on the record before us,* a determination of whether or not the eight-semester requirement is reasonable vel non. The only evidence bearing upon the *reasonableness vel non of the eight-semester requirement* was (1) the footnote recommendation of the Missouri State Board of Education and (2) superintendent Ledbetter's testimonial approval. On the other hand, Ledbetter readily conceded on cross-examination that there was no eight-semester requirement for graduation in the school system of the nearby city of Joplin, Missouri.[12]

In short, it has been and still is our view that the reasonableness vel non of the eight-semester requirement should *not* be determined on such scant evidence bearing upon that question as is contained in the transcript under review here.

In so limiting the basis of our holding to the unreasonable and discriminatory *appli-*

cation of the requirement to relator Ronnie, we thereby affirm our reluctance to reach for questions not essential for resolution of the case before us. *State ex rel. State Highway Commission v. Blair,* 484 S.W.2d 36, 38 (Mo.App.1972); *Ratterree v. General Motors Corporation,* 460 S.W.2d 309, 315 (Mo.App.1970); *Shelton v. M & A Electric Cooperative,* 451 S.W.2d 375, 380 (Mo.App. 1970). See *McCaffrey v. Estate of Brennan,* 533 S.W.2d 264, 266 (Mo.App.1976). "Sufficient unto the day is the evil thereof." Matthew 6:34.

Appellants' motion for rehearing or in the alternative to transfer to the Supreme Court of Missouri is overruled.

HOGAN and TITUS, JJ., concur.

---

12. From the official state highway map [*In re Village of Lone Jack,* 419 S.W.2d 87, 91(6) (Mo. banc 1967); *Walsh v. Table Rock Asphalt Construction Co.,* 522 S.W.2d 116, 118(1) (Mo.App. 1975); *Galemore v. Haley,* 471 S.W.2d 518, 520 (Mo.App.1971)] and the 1970 United States decennial census report [*Varble v. Whitecotton,* 354 Mo. 570, 575, 190 S.W.2d 244, 246(4); *Belle State Bank v. Industrial Com'n, Division of*

*Employment Security,* 547 S.W.2d 841, 843 (Mo.App.1977); *Moulder v. Webb,* 527 S.W.2d 417, 419(4) (Mo.App.1975)], we know judicially that Sarcoxie is a community of 1,175 persons situate in the southeast corner of Jasper County and that Joplin is a city of 39,256 persons situate in the southwest corner of the same county some 22 miles west of Sarcoxie.