DELTA LOAN AND FINANCE,
Plaintiff-Appellant,

v.

OSAGE OUTDOOR ADVERTISING CO.
and Glenn L. Whitman and Janet E.
Whitman, Defendants-Respondents.

No. 10075.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 25, 1979.

ny, a corporation, sold outdoor advertising sign contracts to customers in the state of Missouri, that plaintiff agreed to buy 13 of the contracts from Osage, and that the contracts were assigned to plaintiff by Osage with full recourse. The suit individually listed the 13 contracts in question. It further alleged that defendants Glenn L. Whitman and Janet Whitman executed a written guarantee to plaintiff which provided that they would guarantee the payment to plaintiff of all amounts due it under the contracts in question. The petition finally alleged that all 13 customers had defaulted, that there was a balance due on the 13 accounts of $11,513.45, and that such amount was due plaintiff from Osage and the Whitmans.

The defendants' answer admitted that the Whitmans, d/b/a Osage Outdoor Advertising, had assigned the 13 advertising accounts to the plaintiff; disputed the amount owed plaintiff; stated that the amount owed on the 13 contracts in question was $1,031.35; stated that on June 28, 1972, plaintiff and the Whitmans had arrived at a compromise settlement of the dispute and that an accord and satisfaction between the parties, by which the Whitmans were to pay plaintiff the sum of $1,031.35, in satisfaction of the disputed accounts, had been reached; and declared that the Whitmans had paid plaintiff that amount, but that plaintiff had refused to honor the accord and satisfaction, after having agreed to do so. The answer also denied liability by defendant Osage Outdoor Advertising Company, a corporation, to plaintiff for the reason that the corporation was not in existence during the time periods in question.

Harold P. Heitmann, Clayton, for plaintiff-appellant.

Alex Bartlett, Jefferson City, for defendants-respondents.

GREENE, Judge.

On June 26, 1974, plaintiff filed suit against defendants in the Circuit Court of Camden County. The suit alleged that defendant Osage Outdoor Advertising Compa-

Plaintiff's reply denied the alleged settlement and the accord and satisfaction. Jury was waived and the case was tried before the court on April 22, 1975. After hearing evidence, the court took the cause under advisement. On June 5, 1975, at the direction of the trial judge, a docket entry, made in the trial judge's minute book, read as follows:

"Case having heretofore been heard and taken under advisement, the Court finds as follows:

As to defendant Osage Outdoor Advertising Company, a corporation, there are no funds owing by said defendant to plaintiff, and, therefore, plaintiff's petition is dismissed as to defendant Osage Outdoor Advertising Company.

As to defendants Glen (sic) L. Whitman and Janet Whitman:

(1) Said defendants d/b/a Osage Outdoor Advertising Company, prior to June 13, 1973, were customers of plaintiff, and, as such, from time to time, negotiated loans from plaintiff, each of said loans being secured by an assignment of a promissory note payable to the order of Osage Outdoor Advertising Co. having a face amount of more than the particular loan to defendants Whitman which was secured thereby;

(2) Certain of said loans are the subject of this action, and, heretofore, on or about June 28, 1972, defendants Whitman and plaintiff reached a compromise agreement as to the balance owed by said defendants to plaintiff, and, as to certain of said loans, an agreement as to rebates which were owed by plaintiff to defendants Whitman, said amounts being as follows:

| Maker of Note Securing Loan | Balance Owed Plaintiff | Rebate Owed Defendants |
|---|---|---|
| Osage Beach-Grand Glaize Chamber of Commerce | $4,049.28 | |
| Cheese, Inc. | 47.33 | |
| Rustic Inns, Inc. | | $ 970.94 |
| Fountains Restaurant | | 168.69 |
| KOA Campground | | 81.86 |
| Cheese, Inc. | | 33.57 |
| Hurricane Deck Resort Assoc. | | 576.15 |
| Cheese, Inc. | | 184.86 |
| Western Hills Motel | 44.01 | |
| Morrison's Mooring | 44.82 | |
| Western Hills Motel | 47.33 | |
| KOA Campground | 113.95 | |
| Cheese, Inc. | 117.55 | |
| **TOTALS** | $4,464.27 | $2,016.07 |
| Net Balance Owed Plaintiff on Loans | $2,448.20 | |

(3) Plaintiff presented no evidence as to what would be a reasonable attorney's fee for attempting to collect the indebtedness owed by defendants Whitman to plaintiff.

Judgment for plaintiff and against defendants Glen (sic) L. Whitman and Janet Whitman in the amount of $2,448.20. Costs taxed to defendants Glen (sic) L. Whitman and Janet Whitman."

Plaintiff and defendants Whitman then filed notices of appeal. Plaintiff's appeal was docketed as No. 10075 and defendants' Whitman as 10085. The appeals were consolidated. The Whitmans' appeal was thereafter dismissed, at their request.

A transcript was then filed in Case 10075. The transcript inadvertently omitted one of the 13 contractual accounts that were in issue for determination by the trial court. This court, on May 11, 1977, dismissed the appeal. *Delta Loan and Finance Co. v. Osage Outdoor Advertising Co.*, 552 S.W.2d 56 (Mo.App.1977). The reason given, in

that opinion, for dismissal was that there was nothing in the record to show that the parties' right to a determination of the issues on all 13 contracts had been complied with, as the transcript only showed a determination of the issues on 12 of the contracts, and, therefore, since the trial court's determination did not dispose of all of the issues, the appeal was premature and should be dismissed.

A supplemental transcript, filed in a subsequent appeal on the same subject matter, Case 10899, shows that the court reporter, who prepared the original transcript for the plaintiff's initial aborted appeal, had inadvertently omitted the disposition by the trial court of one of the disputed accounts, which omission had triggered the dismissal, and also showed that a formal judgment, dated June 5, 1977, correctly setting out the decision of the trial court disposing of all of the parties and issues and making a final determination of the rights of the parties, had been filed in the trial court.[1]

Based upon those revelations this court, by orders, reinstated the appeal in Case 10075 (this appeal), dismissed a second appeal by plaintiff involving the same parties and issues in Case 10899, since the second appeal was moot after this appeal was reinstated, and ordered that the original and supplemental transcripts, all exhibits, and all briefs of the parties, in Case 10899, be made a part of the record in this case.

On appeal, plaintiff raises two assignments of error which are that the trial court erred 1) in finding that a compromise agreement was reached between the parties because there was no evidence of an accord and satisfaction in that all parties had not agreed to a settlement, and 2) not finding that plaintiff was entitled to a judgment in the amount of $11,513.45, as the evidence showed that plaintiff was entitled to a judgment in that amount. No issue was raised, on appeal, as to the dismissal of plaintiff's suit against the corporation.

■ Since this is a court-tried case, the judgment of the trial court must be sustained unless there is no substantial evidence to support it, unless the judgment is against the weight of the evidence, or unless the trial court erroneously declared or applied the law to the facts in arriving at its determination of the rights of the parties. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Plaintiff does not contend that the trial court erroneously declared or applied the law in this case, but contends obliquely, that there was no substantial evidence to support the judgment and that the only verdict possible, under the evidence, would be for plaintiff in the sum of $11,513.45. We disagree.

The evidence reveals that there was no real dispute between the parties as to the handling of the accounts on an individual basis. Upon assignment of one of the sign contracts to plaintiff by Osage Outdoor Advertising Co. (hereinafter referred to as Osage), plaintiff, as a loan to Osage, would disburse to Osage 60% of the face amount of the contract. On its records, the 60% was subtracted from the face amount of the contract by plaintiff. Further subtractions were made by plaintiff from the remaining balance, which subtractions included a discount factor of either 6 or 6½% and, in some cases, a charge for credit life insurance in the sum of 1% per year. The customer would then make its monthly payments to plaintiff instead of Osage. When the total amount of the payments equalled, or exceeded, the amount advanced to Osage plus the amount charged by plaintiff for the discount and the credit life insurance, a payoff would be declared, and the account in question would be reassigned to Osage. In order to save the time of all concerned, it was not unusual for several accounts to be settled at the same time. The parties would meet, recalculate interest on individual accounts, make payment adjustments

---

1. Since a formal judgment was belatedly filed, it is not necessary to decide if the docket entry of June 5, 1977, disposing of all parties and all issues and constituting a final determination of the rights of the parties, as mandated by Mis-

souri Rule of Court 74.01, V.A.M.R., constituted a final judgment for the purpose of appeal. It gave the "appearance" of being one. See *State ex rel. State Highway Comm'n. v. Tate*, 576 S.W.2d 529, 531 (Mo. banc 1979).

and effect a reassignment of the contracts in question. The calculations, adjustments and settlements were made on an individual contract basis in each case. A credit or a debit, depending on the facts, would then be agreed upon.

The real dispute between the parties concerns a so-called "master reserve account". Osage had executed a reserve agreement with plaintiff (plaintiff's exhibit 1) providing, in part, that plaintiff could withhold a reserve amount from payments made to it by the customer in question, as security for obligations of Osage. Plaintiff contends and its evidence was to the effect, that this meant any and all due and unpaid obligations of Osage to plaintiff, and not merely due and unpaid obligations on the 13 individual accounts in question. According to its witness, Robert Martin, plaintiff kept, in its St. Louis office, a master reserve account, which showed an indebtedness to plaintiff from Osage, and by virtue of the guaranty agreement, by defendants Whitman, in the sum of $11,513.45. The evidence of defendants Whitman showed that the reserve account agreement was treated by the parties as a "holdback" agreement, under which plaintiff withheld all payments to Osage on the individual accounts until plaintiff had been repaid its loan, discount, and in some cases, credit life insurance payments; that the parties never intended to have the individual reserve accounts lumped into one master reserve account, and that, to their knowledge, there was no master reserve account. Plaintiff did not present any evidence that defendants were ever aware of any master reserve account before the lawsuit was filed.

The evidence showed that all past settlements of accounts by the parties was on an individual account basis, with no reference to credits or debits in a master reserve account. The evidence was undisputed that on June 29, 1972, the Whitmans met with Wayne Anderson, the manager of plaintiff's office in Waynesville, Missouri. Prior to the meeting, defendant Janet Whitman had figured payoffs on the 13 accounts in question, plus two additional accounts of Ozark Trails, and had prepared a worksheet (defendants' exhibit B) showing the debit or credit balance on each account. Defendants Whitman contended, based on the figures on the worksheet, that the amount owed by them to plaintiff, after deducting rebates due them from plaintiff on all 13 accounts and the two Ozark Trails accounts, was $1,031.35, and they tendered a check to Anderson in that amount. Mrs. Whitman testified, on redirect examination, that the figures upon which she based her computations in defendant's exhibit B, and on which she said a settlement agreement was made, included the two Ozark Trails accounts on which two accounts the Whitmans claimed a balance was due to them of $1,416.85. Anderson, who was defendants' witness, testified that he and the Whitmans would periodically go over individual accounts to determine the payoff due, that the payoff figure was determined on each individual account, and the individual account method was used in the June 29, 1972 meeting to determine the amount due plaintiff. Anderson had never seen any "master reserve account", as that was handled in plaintiff's St. Louis office. Anderson did not take into consideration delinquencies on all accounts in computing the accounts in question, as "there was always more money coming into the reserve", but only took into consideration delinquencies on the 13 individual accounts that were the subject matter of the lawsuit. In the June 29, 1972 meeting, all of the 13 accounts in question were taken into consideration in arriving at a settlement figure, and the parties used the figures shown on the 13 individual account cards in figuring the payoff.

The trial court, in its judgment, disallowed the two Ozark Trails accounts in the total amount of $1,416.85, found that a balance was owed to plaintiff on 7 of the accounts in question in the amount of $4,464.27 and that a rebate was owed to defendants Whitman in the sum of $2,016.07 on the other 6 accounts, leaving a net balance due plaintiff from defendants Whitman in the sum of $2,448.20, for which sum judgment was entered for plaintiff.

In appellate review of a court-tried case, the overriding concern is whether the trial court reached the right result and not whether the reason assigned by the trial court for its judgment was correct or incorrect. Regardless of the theory on which the judgment here was based, i. e., a compromise settlement, it should be affirmed if, based on the evidence, such result could properly have been reached. *State ex rel. Sageser v. Ledbetter*, 559 S.W.2d 230, 234–235 (Mo.App.1977).

We hold that there was substantial evidence to support the trial court's conclusion that a compromise settlement in the amount of $2,448.20 had been reached after discussions between the Whitmans and plaintiff's agent and that such finding was not against the weight of the evidence. We further hold that there was substantial evidence in the record to show that on the 13 accounts in question, there was a balance due plaintiff from the Whitmans of $2,448.20, independent of any claim by the Whitmans of compromise settlement or accord and satisfaction, and that such finding would not have been against the weight of the evidence, giving due deference to the right and duty of the trial court to determine the credibility of the witnesses. The judgment was proper under the evidence in this case.

The judgment is affirmed.

All concur.