Dear Drs. Ahr and Mallory:
This is in response to your joint request for an opinion in which you pose nine questions relating to the education of school-aged children in facilities and programs of the Department of Mental Health (hereafter "DMH"). This opinion request is born of a disagreement between DMH, the Department of Elementary and Secondary Education (hereafter "DESE") and local school districts, as to which agency bears the responsibility for educating children placed in DMH facilities as a result of a need for services which DMH provides. State law is not a model of clarity as it addresses the appropriate assignment of such responsibility. The difficulties presented by state law are compounded by federal laws (which we discuss below) which arbitrarily restrict the options of DMH and DESE and which, in practical application, impede these state agencies in their attempt to serve their clients and achieve the goals for which they were created.
We have no control over the federal government; we can only lament its careless disregard for what we believe are the best interests of Missouri's mentally ill and mentally handicapped children. We do suggest, however, that our General Assembly carefully study and consider appropriate legislation to clarify the important relationship between DMH and DESE which your questions call into focus.
Because of our answer to question number one, we believe that answers to only five of your questions need be given. However, before these questions may be answered, a review of applicable state and federal law is necessary to establish the constitutional and statutory basis from which these answers flow.
Article IX, Section 1(a), provides:
 A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law.
Article IX, Section 2(a) creates a state board of education and vests in it "[t]he supervision of instruction in the public schools. . . ."
Article IV, section 37(a) provides that the Department of Mental Health "shall provide treatment, care, education and training for persons suffering from mental illness or retardation, shall have administrative control of the state hospitals and other institutions and centers established for these purposes and shall administer such other programs as provided by law."
These three constitutional provisions seem to create duplicative responsibilities in the public school system and DMH for the provision of education for children who reside in DMH institutions. On the one hand, the DESE bears responsibility for the supervision of efforts to carry out the general constitutional mandate of Article IX, Section 1(a); on the other hand, the constitution places an affirmative duty on DMH to provide education for all persons suffering mental illness or mental retardation.[1]
Under the directive of Article IX, Section 1(a), supra, the Missouri legislature has established a system of free public schools which is organized into local school districts. The right granted by the Constitution in Article IX, Section 1(a) extends only a right to attend a public school in the district of the child's domicile. State ex rel. Biggs v. Penter, 96 Mo. App. 416,70 S.W. 375 (1902); State ex rel. Roberts v. Wilson,221 Mo. App. 9,297 S.W. 419 (1927). When a child is placed outside his school district of domicile by a state agency or court, legislation and the constitution provide for an alternative source of gratuitous education. Pursuant to Section 162.970 RSMo 1978, such handicapped children may be placed outside their domiciliary district by courts of competent jurisdiction, the Department of Social Services or DMH.
When a child is placed outside his domiciliary district, the domiciliary district no longer can provide the education guaranteed by the constitution directly. Thus, a determination of which agency of the state assumes the educational responsibility must be made.
Chapter 162, RSMo, creates a comprehensive system of responsibility for the provision of education to school-aged children residing in the state. Sections 162.670 to 162.995
RSMo, directly address the provision of educational services to handicapped and severely handicapped children. Section 162.670
RSMo 1978, states the purpose of the Special Educational Services Law (Section 162.670 et seq.) as follows:
 In order to fully implement section 1(a) of article IX, . . . it is hereby declared the policy of the state of Missouri to provide or to require public schools to provide to all handicapped and severely handicapped children within the ages prescribed herein, as an integral part of Missouri's system of gratuitous education, special educational services sufficient to meet the needs and maximize the capabilities of handicapped and severely handicapped children. The need of such children for early recognition, diagnosis and intensive educational services leading to a more successful participation in home, employment and community life is recognized . . . .[2]
Section 162.680 RSMo 1978, provides for the education of handicapped and severely handicapped children "[t]o the maximum extent practicable . . . along with children who do not have handicaps. . . ."
Section 162.685 RSMo 1978, requires the state board of education to establish standards for special education programs in Missouri. Section 162.705 RSMo 1978, allows local school districts or special districts which are unable to provide special educational services to handicapped or severely handicapped children to contract with nearby districts or, if no suitable program is available, with nonprofit organizations to provide such special education. The state board of education may provide special educational services by contract, if a local district fails to provide special educational services. Funding for the contractual provision of special educational services is the responsibility of the district of residence of the handicapped child.
Some children who come within the definition of "handicapped" contained in Section 162.610, RSMo 1978, are patients in DMH facilities. When such a placement occurs, the school district of domicile of the child pays toward the cost of the education of that child an amount equal to the local tax effort regardless of whether the child is educated in a DMH facility or by the local school district. Section 162.740 RSMo Supp. 1983.
We note that the General Assembly has required payment by the parents' district of residence for a child attending "an educational program for a full-time patient or resident at a facility operated by the department of mental health. . . ." Section 162.740. In addition, Section 162.745 RSMo Supp. 1983 requires DMH to "determine the amount due from each school district under section 162.740. . . ." The school district of residence must remit "to . . . the department of mental health, from either teacher or incidental funds of the district, the amount due the state. . . . [T]he department of mental health shall deposit the moneys with the state treasurer." Id.[3]
Section 162.970.1, RSMo 1978, provides that children in two categories — those who are admitted to programs or facilities of the Department of Mental Health and those who reside in a school district other than their district of domicile as a result of placement by a court or the Departments of Social Services or Mental Health,
 [S]hall have a right to be provided the services described by sections 162.670 to 162.995 and shall not be denied admission to any appropriate regular public school or special school district program or program operated by the state board of education, as the case may be, where the child actually resides because of such admission or placement; provided, however, that nothing in sections 162.670 to 162.995 shall prevent the department of mental health, the department of social services or a court of competent jurisdiction from otherwise providing or procuring such special educational services for such child. [emphasis added]
We believe that Section 162.970.1 guarantees to children in state placement, who are not residing in their parents district of domicile, the right to attend and be served by the public school or special school district where the child actually resides. This is a natural statutory extension of the child's constitutional right to attend the schools in which he or she is domiciled. But we believe this statutory right is tempered by Art. IV Section 37(a) with regard to children whose handicap makes them a danger to themselves or others if not under constant supervision, who are, therefore, unable to leave the institution, and thus, are not appropriate candidates for off-facility education. These children are not constitutionally entitled to an education by the local district since they do not reside in their domiciliary district, and cannot exercise their statutory right to admission to regular public school or special school district programs. They are, however, constitutionally entitled to an education, to be provided by DMH, by virtue of Art. IV, Section 37(a). Chapter 162 clearly contemplates that DMH will, in some instances, be an educational provider. See e.g. Section 162.745,supra.
With these general concepts of responsibility in mind, we turn to a review of federal law which impacts upon the answers to your questions. The Education of the Handicapped Act (hereinafter "EHA" or the "Act") places an affirmative responsibility upon states accepting federal funding under the Act to provide a free appropriate public education to children who come within the Act's definition of "handicapped child" set forth in20 U.S.C. § 1401(a)(1). See 20 U.S.C. § 1412(1).
The Act requires, as a precondition to receipt of federal funds, that a state or centralized educational agency prepare and submit a state plan of compliance guaranteeing the provision of educational services and procedural safeguards, 20 U.S.C. § 1413(a). The state educational agency must approve all applications for federal funding tendered by educational agencies, or institutions providing public education, which comply with the Act, 20 U.S.C. § 1414(b). In Missouri, the State Board of Education, through DESE, has the authority, and "ultimate responsibility for compliance with . . . [the Act's] statutory mandate . . . ." Yaris v. Special School District ofSt. Louis County, 558 F. Supp. 545, 560 (E.D., Mo. 1983), aff'd,on appeal ___ F.2d ___ (8th Cir. 1984); 20 U.S.C. § 1412(6);34 C.F.R. 300.134.
We turn now to the questions you have posed. Throughout this opinion we assume that the educationally handicapped children to which we refer are persons who cannot leave the campus of a DMH facility, by DMH's own determination, to receive their education.
 I.
You first inquire as follows:
 What is the responsibility and authority of the Department of Mental Health under applicable state and federal law with regard to admitting and discharging school-aged children into or from state mental health facilities or Department of Mental Health placement?
Admission to and discharge from the facilities of the Department of Mental Health for those suffering from mental illness or mental disorder are controlled by Sections 632.110 through632.175, and for those persons affected by mental retardation or developmental disabilities, by Section 633.110 through 633.130. Both Chapters 632 and 633 provide that admission to state facilities occurs only on the basis of qualifying diagnoses and the need for inpatient treatment. Perhaps more importantly, both chapters provide that a review of each patient's condition occur at least every one hundred eighty days, and should the patient's condition no longer require mental health inpatient care, that person is to be discharged from the facility. Sections 632.175;633.125; 633.130.
The Omnibus Mental Health Act of 1980, contained in Chapters 630 through 633 RSMo clearly contemplates that admission and discharge of school-aged children into and out of facilities and programs of the Department of Mental Health will be accomplished based upon the need of the child for psychiatric treatment or rehabilitative mental retardation services. In our review of the statutes pertaining to mental health we find nothing to indicate that the legislature intended that educational considerations would play a part in admission and discharge decisions for school-aged children. To the contrary, the direction contained in the statutes appears to exclude non-service related needs as reasons to retain patients in state mental health facilities or programs.
As a general rule, Chapter 162 assigns responsibility for the provision of special educational services to handicapped children to the school district in which the child is placed or, in default of the local school district providing special educational service, to the Department of Elementary and Secondary Education. We believe Section 162.970.1, read together with Article IV, Section 37(a), provides an exception to the general rule by requiring DMH to provide special educational services for handicapped or severely handicapped children who are placed out of their domiciliary district and whose handicap makes it impossible for them to leave the campus of the DMH facility to which they are assigned. When the Department of Mental Health is the educational provider because of the nature of the child's handicap, DMH must comply with EHA and the regulations promulgated pursuant to EHA.
Thus, with respect to the discharge of a patient who is school-aged, DMH must make provisions to retain a child in its special education program while required federal and state notice and due process rights are provided, unless it can be shown that the child's continued stay in a DMH facility is harmful or detrimental to his or her welfare. In particular, we note34 C.F.R. 300.504(a) which requires reasonable written notice prior to any action to change the educational placement, and34 C.F.R. 300.512 requiring that the child be held in his or her current placement pending the outcome of due process hearings. The Department of Mental Health is bound to comply with the EHA if it is providing related services or is involved in the education of handicapped children. 34 C.F.R. 300.2.
Under federal law and state statute a child's educational placement may not be changed without prior parental consent or affording the parents due process rights. 20 U.S.C. § 1415(e)(3);34 C.F.R. 300.513; Section 162.955, RSMo 1978. We note, however, that whenever the Department of Mental Health decides to discharge a school-aged patient from a facility outside that patient's domiciliary district because inpatient treatment or habilitation is no longer necessary (we understand that the decision to discharge is based on a professional assessment that treatment in each individual case in the DMH facility is no longer necessary or in the child's best interests), DMH must continue to permit residence at the facility until due process as outlined in federal and state law has been afforded the parents or the parents consent to a change in educational placement. Treatment, by state law, cannot be continued during the pendency of due process as the EHA and Chapter 162, supra, confer no due process rights on a child regarding the termination of treatment not directly referred to in an Individual Education Plan (hereafter "I.E.P."). The educational provider, whomever it may be, is responsible for the formulation of the I.E.P. If a related service is required to be performed in an I.E.P., DMH remains responsible for that related service even if the Individual Habilitation Plan (hereafter "I.H.P.") or the Individual Treatment Plan (hereafter "I.T.P.") no longer requires such treatment and treatment is discontinued.
It is therefore our opinion that the Department of Mental Health need not consider educational factors in admission and discharge of school-aged children from treatment at its facilities and programs. However, where DMH is the provider of special educational services as set out in Section 162.970.1, DMH must comply with the provisions of the EHA and Section 162.955, supra,
when admitting and discharging school-aged children from that portion of its plan of treatment or habilitation which constitutes the special educational service.
 II.
The second question we answer is,
 What is the responsibility and authority of the Department of Mental Health with regard to the education of and provision of related services to school-aged children suffering from mental illness or retardation who are in-patients of state mental health facilities or who are patients of the Department of Mental Health on community placement?
We believe that DMH is obligated to provide an education only for those handicapped or severely handicapped children in its care who are placed outside their domiciliary district and who are unable to leave DMH facilities or placements for educational services at the local school district. Both federal and state law require that a child be treated and educated in the least restrictive environment. See, 20 U.S.C. § 1412(5)(B); 34 C.F.R. 300.550(b)(1); 34 C.F.R. 300.554; Sections 162.680.2 and 630.115. Thus, DMH's responsibility for the provision of education of children residing outside of their domiciliary district in a DMH facility or placement turns on the ability of the child to attend the local school district's special education program. With regard to those children for whom DMH is the responsible educational provider, DMH must provide education and related services.
In sum, for children who are residing outside their district of domicile as patients at a DMH facility or in a DMH placement and who cannot leave the campus to obtain educational services, it is our opinion that DMH has the same responsibilities and authority as a school district would have in order to, in the first instance, determine what constitutes an appropriate education for each child on an individual basis as outlined in the EHA regulations and regulations promulgated pursuant to Section 162.685, RSMo 1978, and to provide for that education as set out in Chapter 162. The school district of domicile remains financially responsible for educational costs of the handicapped or severely handicapped child up to the local tax effort. Section 162.740, supra. All Department of Elementary and Secondary Education regulations and guidelines and the Missouri State Plan are to be complied with by DMH with regard to procedural safeguards required by the EHA, to the extent of its financial resources. But see, Roncker v. Walter,700 F.2d 1058 (6th Cir. 1983).
 III.
Your third question is,
 What is the responsibility and authority of the State Board of Education with regard to the delivery of educational and related services to school-aged children who are in-patients of state mental health facilities?
As the state educational agency entrusted with ultimate responsibility for compliance with the EHA as well as establishing standards, promulgating regulations for special education programs and defining eligibility criteria for handicapped and severely handicapped programs, Section 162.685, supra, the State Board of Education possesses authority over the eligibility criteria for educational programming in a state mental health facility, educational evaluation and educational reevaluation of handicapped children who are patients in state mental health facilities, the content of the educational program through its approval power, the qualifications of personnel involved in the education process, and the length of each handicapped minor child's school day.
The State Board of Education also bears the ultimate responsibility to ensure compliance with federal standards and regulations under EHA. To that end, and in furtherance of that purpose, the State Board of Education has a responsibility and all necessary authority to monitor, through the procedures set forth in the Missouri State Plan, the provision of educational services within a state mental health facility to handicapped children.
 IV.
Your fourth question is,
 What is the responsibility and authority of a local school district with regard to the delivery of educational and related services to handicapped and severely handicapped school-aged children who are in-patients of state mental health facilities?
When DMH has placed a handicapped child in a district other than the one in which the child is domiciled and that child is unable to leave the DMH facility campus to obtain educational services, DMH is the responsible agent for the provision of special educational and related services. Section 162.970 guarantees to educationally handicapped school-aged children residing outside their district of domicile, who are patients of state mental health facilities and programs but whom DMH determines can attend educational programs in the local school district the statutory right to be provided educational and related services by the local school district through established programs. Section 162.970. See also Section 162.725, RSMo. Note however, that the school district of domicile of a child's parents remains financially responsible up to its local tax effort, Section162.740, supra, for services rendered to the child-patient by the district of residence or DMH. Finally, for those children who are in a DMH facility or placement which is located in the district of domicile, the local district continues in its constitutional obligation to provide education and related services irrespective of whether the child is capable of leaving the facility to obtain that education.
With regard to severely handicapped children who can attend educational programs at the local district, the legislature has mandated that the Department of Mental Health shall pay the serving district the amount by which the per pupil cost of special educational services exceeds the amount received from the domiciliary district and other state monies. Section 162.970.4, RSMo. Thus, the local district which provides special educational programs for a school-aged, severely handicapped child who is an inpatient at a DMH facility should be fully reimbursed for the education and related services for that child by domiciliary district payments, state and Department of Mental Health reimbursement.
 V.
Your final question is,
 When a determination has been made by the head of a mental health facility that psychiatric hospitalization of a school-aged child is no longer necessary, but the parents of a child request an educational due process hearing, is the Department of Mental Health required to provide such a hearing prior to or following discharge of the child?
Unless the school-aged patient is being provided educational programs by a local district under Section 162.970, supra, or unless the inpatient child is in his or her district of domicile, DMH is to provide or procure educational services for school-aged children in its facilities and programs. The Department of Mental Health is the educational provider; therefore it assumes the obligation to provide the due process hearing required by the EHA. The obligation to provide such due process is upon the educational provider. Section 162.955, supra, 34 C.F.R. 300.504 to 300.512.
As we noted in our answer to question one, admission and discharge from state mental health treatment programs is the responsibility of the Department of Mental Health within the parameters set out in Chapters 630, 632 and 633, RSMo. The Department may not retain patients for treatment in its facilities other than for mental health care. Further, those who are treated by the Department of Mental Health must be treated in the least restrictive environment. Sections 630.115, 632.175, 633.130,supra. The Department of Mental Health is without authority to retain in its facilities those patients who, while in need of continued mental health care and treatment, are eligible to be treated in a less restrictive environment. Nevertheless, federal law requires that during the pendency of any due process proceedings the child must remain in his or her present educational placement. 34 C.F.R. Section 300.513. Therefore, for those school-age children for whom DMH is the educational provider, DMH must provide some living accommodation during the pendency of the due process procedures, having in mind that to determine that a patient of the Department of Mental Health could be held in a facility of that Department beyond the time it has been determined that a less restrictive environment exists for such care and treatment may be dangerous to the child's health or welfare or may violate the principle that unnecessary confinement in a mental facility is constitutionally objectionable. See Parham v. J.R.,442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979).
CONCLUSION
It is the opinion of this office that:
(1) Missouri law requires the Department of Mental Health to provide special educational services to school-aged, inpatient children who reside outside the school district of their domicile and whose condition renders them unable to leave the Department of Mental Health facility to which they are assigned;
(2) The Department of Elementary and Secondary Education has the authority to monitor the provision of educational services by the Department of Mental Health, for compliance with the Education of the Handicapped Act;
(3) The Department of Mental Health is required to provide a "due process" hearing either prior to or following the discharge of a school-age child when the Department of Mental Health acts as the educational provider. If the Department of Mental Health is not acting as the educational provider, the local school district or the Department of Elementary and Secondary Education, must provide such due process hearing;
(4) The Department of Mental Health need not continue treatment or care of school-age children discharged by the Department of Mental Health pending an "educational discharge" hearing; and
(5) Section 162.970.4, RSMo, requires the Department of Mental Health to pay the serving district the amount by which the per pupil cost of special educational services exceeds the amount received from the domiciliary district and other state monies for severely handicapped school-age children in facilities or programs of the Department of Mental Health when the child is educated by the local district under Section 162.970.1, supra.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] In interpreting Article IV, Section 37(a), supra, and the statutory implementations of the constitution, we may consider legislative interpretations. In re V., 306 S.W.2d 461 (Mo. banc 1957); State ex rel. Randolph County v. Walden, 206 S.W.2d 979 (Mo. banc 1948) We may also consider the state of the law at the time of the adoption of Senate Committee Substitute for House Joint Resolution No. 65 by the people as part of our constitution (which added Article IV, Section 37(a), to the constitution) in 1972. Prior to the adoption of Section 37(a) by the people, the Department of Mental Health existed only as a division of another department of state government. We find no legislative history which explains the development of HJR 65. However, we note that at the time HJR 65 was adopted by the legislature, the statutory enactments relating to mental health directed the Division to provide "treatment, examination and report, education and training of persons suffering from mental illness or mental retardation, . . . ." Section 202.020, RSMo 1969.
In 1973, the year after the constitution was amended by Article IV, Section 37(a), the state legislature amended Chapter 202 to establish the regional center method for entry into, and exit from, services provided to the mentally retarded and extended those services to a newly defined class called the "developmentally disabled." In that 1973 amendment, "(6) training and education" was listed among twelve categories of services which a DMH regional center was authorized to provide to its clients.
Finally, we note that the General Assembly has provided appropriations to DMH to fund some educational efforts for handicapped inpatients since 1973.
[2] Section 630.020.1(2) RSMo Supp. 1983, contains a similar charge to DMH:
 The department shall seek to do the following for the citizens of this state:
* * *
 (2) Maintain and enhance intellectual, interpersonal and functional skills of individuals affected by mental disorders, developmental disabilities or alcohol or drug abuse by operating, funding and licensing modern treatment and habilitation programs provided in the least restrictive environment possible; . . . .
We believe the language of Section 630.020 is the functional equivalent of the language of Section 162.670, as it describes the role of DMH in the lives of handicapped or severely handicapped children entrusted to DMH's care. The development of the intellect is a function of education. Enhanced interpersonal skills allow for more successful participation in home and community life. Functional skills are those which allow a handicapped person to obtain and keep employment.
[3] In Attorney General Opinion No. 80, dated October 19, 1976, this office opined regarding the method the Department of Mental Health should utilize in collecting the local tax effort for each handicapped child placed in its facilities when a dispute with the local school district arose.